The STATE of Ohio, Appellee,

v.

GILBO, Appellant.

[Cite as *State v. Gilbo* (1994), 96 Ohio App.3d 332.]

Court of Appeals of Ohio,
Montgomery County.

Nos. 14234, 14235, 14236, 14237 and 14238.

Decided Aug. 3, 1994.

---

*John F. Blake,* for appellee.

*John R. Doll,* for appellant.

*Per Curiam.*

Tor Erik Gilbo appeals from the judgments of the Kettering Municipal Court which found him guilty of underage possession of alcohol, two charges of driving without a valid operator's license, and two charges of driving under suspension. This appeal consolidates five cases from the Kettering Municipal Court.

On April 18, 1993, Gilbo was riding as a passenger in a friend's car. After the driver made an improper U-turn, a police officer stopped the car and identified the two teenagers in the car as Gilbo and Brady Hill. The officer observed the two making "suspicious movements" and decided to search the car for weapons.

During the search, beer was found in the trunk of the car. Gilbo claimed that the beer was his and that he was twenty-one. His driver's license confirmed that he was twenty-one. Hill was arrested, but Gilbo was allowed to leave and to take the beer with him.

Later in the day, the officer obtained a LEADS printout of Gilbo's driver's license and discovered that Gilbo was only eighteen years old. The officer went to Gilbo's house and re-examined Gilbo's license. At first glance, the license showed that Gilbo was twenty-one. However, upon closer examination the officer detected that the lamination had been partially lifted, leaving marks which altered the appearance of Gilbo's year of birth. Gilbo claimed that the license had been damaged in the laundry. The officer then seized the beer and Gilbo's license.

The next day Gilbo appeared at the police station. He gave a statement and was charged with underage possession of alcohol. The officer gave him a photocopy of his driver's license.

On April 28, 1993, Gilbo was stopped by a Montgomery County Sheriff's Deputy while driving a 1979 Jeep. He was charged, *inter alia*, with driving without a valid operator's license and given a court date of May 6, 1993. On May 1, 1993, while driving the same car, Gilbo was stopped by the same officer. He was again charged with driving without a valid operator's license and given the same court date.

On May 6, 1993, Gilbo appeared in Kettering Municipal Court and was referred to the public defender's office. The court then warned Gilbo that the Ohio Bureau of Motor Vehicles ("BMV") indicated that his license was under suspension. The judge concluded as follows:

"Having one charge is bad, two charges is worse, and three charges would guarantee that you're gonna [*sic*] spend a lot of time in jail. So whatever your excuse to drive until this is cleared up, don't take the chance."

After he left court on May 6, Gilbo was observed driving the 1979 Jeep, and, on May 14, Gilbo was served with a summons charging him with driving under suspension.

On May 8, 1993, Gilbo, again driving the Jeep, was stopped by a Montgomery County Sheriff's Deputy and charged with driving under suspension.

August 24, 1993, Gilbo once again appeared before the Kettering Municipal Court. The court indicated that a plea bargain had been arranged whereby Gilbo would plead no contest to the one underage-possession-of-alcohol charge, the two driving-without-a-valid-operator's-license charges, and the two driving-under-suspension charges, and the other charges would be dismissed. Gilbo, through counsel, entered his no contest pleas. The court permitted Gilbo to withdraw his former pleas of not guilty and accepted the pleas of no contest. The court then stated, "Court[,] based on the complaint and offense reports, as well as the records of the Bureau of Motor Vehicles, will find Defendant guilty of each of the offenses charged." At that point, Gilbo's counsel asked if he could make a statement "before [the court] makes [its] findings." The trial court allowed the statement.

Gilbo's attorney explained that the beer related to the underage-possession-of-alcohol charge actually belonged to Gilbo's friend and that Gilbo claimed possession of it to keep his friend out of further trouble.

The attorney then addressed the driving-without-a-valid license and driving-under-suspension charges as follows. On April 28, Gilbo only had a photocopy of his license because his license had been taken by the Centerville police. Gilbo's attorney argued that the charge was for not having his license and that Gilbo did not know that his license was suspended. A similar explanation was given for the May 1 charge. Gilbo's attorney argued that Gilbo did not know that his license had been suspended until his arraignment on May 6, during which the court informed him of that fact.

Gilbo's attorney explained how Gilbo's license was suspended without Gilbo's knowledge. On December 26, 1992, Gilbo received a speeding ticket in Pennsylvania. Gilbo apparently sent a check to pay the fine for that citation, but the check was not received by the Pennsylvania authorities. When it did not receive a response from Gilbo, Pennsylvania sent a "Request for Suspension of Driving Privileges" to the BMV in accordance with the Non–Resident Violator Compact (hereinafter "the Compact"). See R.C. 4511.95. The BMV suspended Gilbo's driving privileges and claimed to have sent him notice of the suspension by ordinary mail. Gilbo never received the notice, and, therefore, he did not know that his license had been suspended. Finally, Gilbo's attorney informed the court that Gilbo had since paid the Pennsylvania fine and that Pennsylvania had notified the BMV that it could terminate the suspension.

After Gilbo's attorney ended his statement, Gilbo agreed with what had been said, and the court questioned Gilbo about the charged offenses. Without making a renewed determination of guilt, the court proceeded to impose penalties on Gilbo. On the charge of underage possession of alcohol, the court imposed a $1,000 fine and one hundred eighty days in jail, suspended $850 of the fine and all of the jail time, and placed Gilbo on three years' unsupervised probation with a condition of "no consumption of alcohol." On both the April 28 and May 1 driving-without-a-valid-license offenses, the court imposed $500 fines and ninety-day jail terms. The court suspended $400 and $450, respectively, of these fines and suspended all of the jail time on the condition of no similar violations for three years. On both the May 6 and May 8 charges of driving under suspension, the court imposed $1,000 fines and jail terms of one hundred eighty days. The court suspended $900 and $800, respectively, of these fines. The court also suspended one hundred seventy days of each term of incarceration and ordered that the two remaining ten-day terms be served concurrently. Finally, the court placed Gilbo on probation for three years for each of these offenses upon the condition that Gilbo be of "general good behavior," and specifically have "no driver's license violations."

Gilbo appeals and asserts three assignments of error. Due to the similarity of the issues presented, the first two assignments of error will be considered together.

"I. The Kettering Municipal Court erred in finding appellant guilty of four violations of Ohio Revised Code § 4507.02(D)(1) because his driver's license suspension was ineffective for lack of actual or constructive notice.

"II. The Kettering Municipal Court erred in finding appellant guilty of four violations of Ohio Revised Code § 4507.02(D)(1) because notification of his license suspension via certified or registered mail was required to validly suspend appellant's driver's license."

Gilbo argues in support of these assignments of error that his driver's license was not properly suspended, and, therefore, the trial court should not have found him guilty. In the first assignment of error, he contends that license suspensions cannot become effective without violating due process rights until the licensee receives actual or constructive notice of the suspension. In the second assignment of error, he asserts that the BMV is statutorily required to send a notice of suspension by certified or registered mail and that his due process rights would be violated if his convictions are upheld because the BMV claims to have notified him by ordinary mail.

The effect of a plea of no contest to a misdemeanor charge is explained in R.C. 2937.07. The pertinent part of this section reads as follows:

"If the plea be 'no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate may make finding of guilty or not guilty from the explanation of circumstances, and if guilt be found, impose or continue for sentence accordingly.".

■ The plea of no contest constitutes an admission, not of guilt, but of the truth of the facts alleged in the indictment, information, or complaint. Crim.R. 11(B)(2). In order to obtain a conviction of a defendant who has pled no contest, the state must offer an explanation of the circumstances to support the charge. This explanation is sufficient if it supports all the essential elements of the offense. *Chagrin Falls v. Katelanos* (1988), 54 Ohio App.3d 157, 159, 561 N.E.2d 992, 994.

■ A defendant who pleads no contest has a substantive right to be acquitted where the state's statement of facts fails to establish all of the elements of the offense. *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 150, 9 OBR 438, 439–440, 459 N.E.2d 532, 534–535. Accordingly, the court may consider an argument by the defendant that the facts as admitted do not constitute the offense charged. See *State v. McGlothin* (Feb. 10, 1993), Montgomery App. No. 13460, unreported, 1993 WL 32023. However, by pleading no contest, the defendant waives his right to present additional affirmative factual allegations to prove that he was not guilty. " 'The essence of the "no contest" plea, is that the accused cannot be heard in defense. Thus any statement by him must be considered as in mitigation of penalty.' " *State v. Herman* (1971), 31 Ohio App.2d 134, 140, 60 O.O.2d 210, 214, 286 N.E.2d 296, 300, quoting Schneider, Ohio Criminal Code (3 Ed.1963), Section 10.1, fn. 4.

■ We will first consider the validity of Gilbo's convictions on the April 28 and May 1 charges of driving without a valid license. On appeal, both parties refer to these charges as "driving under suspension" offenses. However, the offense alleged on the citations and the transcript of Gilbo's plea demonstrate that he pled no contest to charges of "driving without a valid Ohio operator's license" for those offenses. The elements of the offense of driving without a valid operator's license are different from the elements of the offense of driving under suspension. Accordingly, the sufficiency of the state's explanation of circumstances regarding each of these offenses must be considered separately.

In *State v. Lesley* (Feb. 26, 1986), Montgomery App. No. 9402, unreported, 1986 WL 2661, this court adopted the reasoning of the Hamilton County Court of Appeals, *State v. Williams* (1984), 17 Ohio App.3d 105, 107, 17 OBR 167, 169, 477 N.E.2d 656, 658, and held that " '[o]nce having been issued an operator's license which is otherwise valid and unexpired, one does not violate R.C. 4507.02[ (A) ] by operating a vehicle while such license is suspended under R.C. Chapter 4509.' "

We further cited with favor *Cincinnati v. Tribble* (1983), 7 Ohio Misc.2d 46, 7 OBR 310, 455 N.E.2d 27, which states the broader holding that a defendant cannot be found guilty of a violation of driving without a license if he has a license, although it is under suspension by the BMV.

Accordingly, the state had to offer an explanation of circumstances as to the driving-without-a-valid-operator's-license charges which was sufficient to support a finding that Gilbo did not have a valid Ohio operator's license. The state failed to meet its burden. All of the evidence before the trial court tends to show that Gilbo did have a valid operator's license which was merely under suspension. Therefore, the state's explanation of circumstances was not sufficient to support each of the elements of the driving-without-a-license charges, and Gilbo had a right to be found not guilty of those offenses.[1]

As to the driving-under-suspension charges, Gilbo is arguing, in effect, that his license was not suspended because he was not properly notified of any potential suspension. R.C. 4507.02(D)(1) does not explicitly list notice of suspension as an element of the offense of driving under suspension. However, Gilbo contends that the state must demonstrate that a defendant had notice of his suspension or that the defendant has taken action that has made it difficult for the BMV to provide notice of suspension.

Although actual knowledge of suspension is not an element of driving under suspension, a person should not be convicted for that offense when he had no way of knowing that his operator's license was suspended. Gilbo's conviction for driving under suspension is analogous to a conviction for possessing a weapon under a disability. See R.C. 2923.13. A defendant may be convicted for possessing a weapon under the disability of a prior indictment regardless of whether he knows that the indictment constitutes a disability. However, to be convicted of this offense, the defendant must know that he was under indictment at the time he took possession of the weapon. *State v. Frederick* (July 17, 1989), Butler App. Nos. CA88–07–111 & CA88–07–118, unreported, 1989 WL 80493. Likewise, it would be fundamentally unfair to convict a defendant for driving under suspension when the defendant had not been given notice that his operator's license had been suspended. Therefore, under the facts of this case, we infer a notice element in the offense of driving under suspension. We note that under different facts, the state may not be required to prove notice, *e.g.,*

---

1. We note that if the explanation of circumstances had been sufficient, the sentences and a portion of the fines on these offenses would have to be vacated. Driving without a license is a minor misdemeanor, but the trial court imposed sentences and fines appropriate for misdemeanors of the second degree. Due to our reversal of Gilbo's convictions for these offenses, however, this error has been rendered harmless.

where the defendant evades notice by moving without providing the BMV with his new address.

Thus, we must determine whether the state's explanation of circumstances supports a finding that Gilbo was notified that his license was suspended. The record before the trial court included a certified copy of a "Notice of Suspension" which was in Gilbo's BMV file and was dated March 3, 1993. The notice lists Gilbo's name and correct address, and it states, "This is your official notice. Ohio Revised Code 4501.022 allows the registrar to send notices by regular mail." The notice also informs Gilbo of his right to request a hearing and of the method by which he could regain his driving privileges.

■ Gilbo denies receiving this notice and contends that the notice was insufficient because it was not sent by certified or registered mail. R.C. 4501.022 states that the Registrar of Motor Vehicles shall determine the appropriate method of providing notice of suspension unless "the registrar is required to provide notification by use of a method specified by law." Gilbo contends that R.C. 119.07 requires the registrar to provide notice of a suspension according to the Compact by registered mail, return receipt requested. R.C. 119.07 applies to notices given when "a statute specifically permits the suspension of a license without a prior hearing." While R.C. 119.07 facially appears to require registered mail notice when licenses are suspended according to the Compact, R.C. 119.062, which specifically refers to the suspension of a motor vehicle driver's license, renders R.C. 119.07 inapplicable. R.C. 119.062 reads in pertinent part as follows:

"(B) Notwithstanding section 119.07 of the Revised Code, the registrar is not required to use registered mail, return receipt requested, in connection with an order revoking or suspending a motor vehicle driver's or commercial driver's license, or a notification to a person to surrender a certificate of registration and registration plates."

Applying the accepted rule of statutory construction that a specific provision should be applied before a general provision, we hold that R.C. 119.062 applies to suspensions of motor vehicle drivers' licenses, that R.C. 119.062 allows the registrar to determine the method of providing notice of these suspensions in accordance with R.C. 4501.022, and that ordinary mail notice is sufficient to notify a defendant that his license has been suspended.

■ Accordingly, the state only needed to offer an explanation sufficient to support a finding that the BMV sent ordinary mail notice of the suspension to Gilbo. The copy of the properly addressed Notice of Suspension in Gilbo's BMV file, without any indication that the notice was not sent or that it was returned undelivered, supports a finding that Gilbo was notified that his license was

suspended. Therefore, the state provided a statement of circumstances which supported each element of the offense of driving under suspension, and the trial court did not err in finding Gilbo guilty of the driving-under-suspension offenses after accepting his plea of no contest.

■ Gilbo also attempts to rely upon his claim that he did not receive the notice. By pleading no contest, Gilbo utilized a procedure to dispose of the charges that did not contemplate the assertion of additional facts tending to establish a defense. *Herman, supra.* Thus, given the fact that the explanation of circumstances supported each of the elements of the offense of driving under suspension, the trial court did not err by failing to consider Gilbo's attorney's statement as a defense. Rather, the trial court was authorized to consider the statement merely "as in mitigation of penalty."

For the foregoing reasons, the first and second assignments of error are sustained as they relate to the driving-without-a-license charges and are overruled as they relate to the driving-under-suspension charges.

"III. The Kettering Municipal Court abused its discretion in imposing sentences of imprisonment and fines against appellant in disregard of the criteria established in Ohio Revised Code § 2929.22."

■ In support of this assignment of error, Gilbo correctly asserts that R.C. 2929.22 lists factors which the trial court must consider when determining whether to impose imprisonment or a fine for a misdemeanor and that a trial court abuses its discretion by failing to consider the statutory factors. See *Cincinnati v. Clardy* (1978), 57 Ohio App.2d 153, 155, 11 O.O.3d 137, 138–139, 385 N.E.2d 1342, 1343–1344. In his brief, Gilbo bases his argument that the trial court disregarded the statutory factors on the fact that "[t]he record in the present matter contains no indication that the trial court affirmatively considered the sentencing criteria * * *."

In analyzing the analogous section listing the factors to consider in imposing a sentence for a felony conviction, R.C. 2929.12, this court has stated that "where the sentences are within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating criteria in the absence of an affirmative showing that it failed to do so." *State v. Crouse* (1987), 39 Ohio App.3d 18, 20, 528 N.E.2d 1283, 1286. The Franklin County Court of Appeals noted that this presumption also applied, in the absence of a showing to the contrary, to a trial court's consideration of the statutory criteria listed in R.C. 2929.22. *Columbus v. Jones* (1987), 39 Ohio App.3d 87, 89, 529 N.E.2d 947, 949–950.

Gilbo has not made an affirmative showing that the trial court failed to consider the mitigating criteria; rather, he relies solely upon the failure of the trial court

to verbalize its consideration of the criteria. The trial court actually imposed sentences on the underage possession of alcohol offense and the driving under suspension offenses which were minimal in comparison to the maximum penalties allowed for those offenses, and it suspended the remainder of the sentences. Thus, the sentences imposed indicate that the trial court considered Gilbo's statement in mitigation, and, in the absence of an affirmative showing of error, we indulge the presumption that the trial court properly considered the statutory criteria.

Accordingly, the third assignment of error is overruled.

The judgments of the Kettering Municipal Court in case Nos. 93 CRB 541, 93 TRD 5760, and 93 TRD 5761, convicting Gilbo of underage possession of alcohol and driving under suspension, will be affirmed. The judgments of the Kettering Municipal Court in case Nos. 93 TRD 5154 and 93 TRD 5196, convicting Gilbo of driving without a license, will be reversed, and Gilbo will be discharged as to those offenses.

*Judgments affirmed*
*in case Nos. 93 CRB 541,*
*93 TRD 5760, 93 TRD 5761.*

*Judgments reversed*
*in case Nos. 93 TRD 5154,*
*93 TRD 5196.*

BROGAN, WOLFF and FAIN, JJ., concur.