JOURNAL ENTRY AND OPINION
{¶ 1} David Dalton appeals following his conviction in Bedford Municipal Court on charges relating to his failure to pay municipal income tax on his lottery winnings. He claims the court erred in finding him a resident of the city of Bedford, that his prosecution and conviction were unconstitutional, and that the court erred in imposing a maximum term of incarceration and fine. We affirm.
 {¶ 2} The record reveals Dalton's sister gave him a "Stocking Stuffer" scratch and win lottery ticket as a Christmas gift in 1999. Luckily, the ticket was a winner and Dalton won 2 million dollars. Dalton, however, did not immediately cash the winning ticket. Two months after winning, Dalton renewed his driver's license using an address in Bedford, and approximately three weeks following the renewal, on March 1, 2000, Dalton went to the Ohio Lottery Commission to claim his prize.
 {¶ 3} For purposes of identification with the lottery commission, Dalton presented his recently renewed driver's license, showing an address of 39 Woodrow Avenue in Bedford. He then filled out a lottery claim form listing the same Bedford address. Upon presentation of the documents, the lottery commission withheld federal and state income tax and issued Dalton a check in the amount of $1,360,000. The check was made payable to David J. Dalton at 39 Woodrow Avenue.
 {¶ 4} Several months later, in August 2000, Dalton and his girlfriend, Mary Jo Lichvar, purchased a home in Burton, Ohio, with a portion of the lottery winnings. Dalton filed taxes for the year 2000 with the city of Burton, but did not list his lottery winnings as income.
 {¶ 5} Sometime in early 2002, the city of Bedford requested a listing from the lottery commission of all recent lottery winners who resided in Bedford. Dalton's name appeared on the list. Noting that no city tax form had been filed, and no city income tax had been paid, tax collector Keith Laffin contacted Dalton regarding the nonpayment of municipal taxes. When contacted, Dalton denied that he owed the money to the city of Bedford, responded that he had no money left, and told Laffin to leave the property, using profanity to hasten his departure.
 {¶ 6} In November 2003, the city of Bedford filed charges against Dalton for failure to file/pay municipal taxes, in violation of local ordinance 169.07, a first degree misdemeanor, and failure to pay taxes, in violation of local ordinance 169.01, also a first degree misdemeanor. The case proceeded to a bench trial in December 2003 and Dalton was found guilty on both counts. He was sentenced to 180 days in jail and received a $1000 fine on each count. Dalton appealed to this court. We reversed the decision and found that the record lacked evidence that Dalton had been informed of his right to counsel and that a waiver of this right was knowingly, voluntarily and intelligently made.
 {¶ 7} In November 2004, a new trial was held and Dalton was again found guilty on both counts and received the same sentence and fine. Dalton now appeals from this sentence in the assignments of error set forth in the appendix to this opinion.
 {¶ 8} In his first assignment of error, Dalton denies that he lived in the city of Bedford and claims the record lacks sufficient proof that his "domicile," as required for tax purposes, was in Bedford. For these reasons, he denies any tax liability to Bedford.
 {¶ 9} Dalton cites East Cleveland v. Landingham (1994),97 Ohio App.3d 385, for the proposition that a municipality seeking to collect municipal income taxes must first define the individual's "domicile." Dalton further contends that the evidence offered by the city of Bedford failed to prove his domicile was proper to Bedford and claims that, since a taxpayer has only one domicile, the prosecuting municipality must prove both a residence and an intent to remain in such a residence in order to prove a "domicile." Dalton instead claims that he was essentially homeless at the time of winning, and that he only used the address in Bedford when claiming the ticket because the lottery commission required an address.
 {¶ 10} Our standard of review regarding domicile has not changed. Those who are required to file a return and pay a tax in Bedford include "residents" with "taxable income." Bedford Ordinances 161.21, 163.01, 169.01 and 169.07. A "resident" is "an individual domiciled in the City." Bedford Ordinance 161.17. Further, the burden of proof rests on the party seeking the right to collect taxes, or in this case, on the city of Bedford.
 {¶ 11} In his first appeal to this Court, Case No. 84081, Dalton likewise claimed that the evidence was insufficient to find that he was a resident of Bedford for tax purposes, and likewise cited to the failure to accurately define "domicile." In rejecting this argument, we found:
"At trial, the tax collector for the city of Bedford testifiedthat the city received information from the Ohio LotteryCommission that appellant won two million dollars in 2000. Theclaim form which appellant submitted to the lottery commission onMarch 1, 2000 stated that his address was in Bedford. Federal andstate income taxes were withheld, and a check was sent toappellant in the amount of $1,370,000. This check included theBedford address, and was endorsed and cashed by appellant. Theforms W-2G which the commission issued to appellant listed hisaddress in Bedford. Appellant's driver's license, issued inFebruary 2000, showed the same address in Bedford. A publicrecords check indicated that appellant purchased a residence inBurton, Ohio, in August 2000. The tax collector testified thatthe tax administrator for the Central Collection Agency indicatedthat appellant had filed a tax return in Burton for the year2000, but did not include the lottery winnings on that return.Theaddress appellant gave to the driver's license bureau before hesubmitted his lottery claim, and the address he gave to thelottery commission in order to collect his winnings aresufficient evidence of appellant's domicile. Although he actuallydid move in August 2000, there is no evidence that he had anyintention of moving from the Bedford address at the time heclaimed the lottery prize. The trial court could properly inferfrom the five month delay from the time appellant claimed hiswinnings until the time appellant moved that appellant did intendto remain there indefinitely. Therefore, we find the evidence wassufficient to support the municipal court's judgment."
 {¶ 12} The same evidence used in our initial determination that Dalton was in fact domiciled in Bedford was presented at his second trial as well. To bolster his claim at the second trial, Dalton also offered the testimony of George Minello, the landlord of the Bedford apartment. Minello testified that he rented the apartment solely to Mary Jo Lichvar, but further testified that he could not verify if Dalton was or was not living at the property since he had only visited once or twice. (Tr. at 93). Mr. Minello's testimony, therefore, went no further in establishing Dalton's lack of a residence in Bedford.
 {¶ 13} We find that the city of Bedford presented sufficient evidence regarding Dalton's residence in the city and his intent to remain in the city by renewing his driver's license and filling out all claim forms using the Bedford address.
 {¶ 14} Dalton's first assignment of error lacks merit.
 {¶ 15} In his second assignment of error, Dalton claims that both his prosecution and conviction were unconstitutional. He argues that because the ordinances do not specify a culpable mental state he cannot be prosecuted. Additionally, he claims that the Ohio constitution forbids imprisonment for debt.
 {¶ 16} Dalton cites to Cincinnati v. DeGolyer (1971),25 Ohio St.2d 101, 104-105, where the Ohio Supreme Court held that, "One may not be imprisoned for the mere failure to pay taxes, in the absence of willful refusal or fraud."
 {¶ 17} Dalton is correct that Section 15, Article I of the Ohio Constitution forbids imprisonment of debt in any civil action, and that the nonpayment of municipal income tax is debt within the meaning of this constitutional provision. See,DeGolyer, supra at syllabus. However, the DeGolyer court also held that their holding does not mean that a sovereign cannot impose sanctions, including criminal penalties, for a refusal to pay imposed taxes. DeGolyer, supra at 105. Instead, in order to impose imprisonment as a sanction for the failure to remit overdue taxes, the municipality must allege and prove that the refusal is willful or intentional. DeGolyer, supra; see, also,Cleveland v. Technisort, Inc. (1985), 20 Ohio App.3d 139, 146.
 {¶ 18} The penalty provision of Bedford Ordinance 171.05, states that:
"Any person who shall: fail, neglect or refuse to make anyreturn or declaration required by this Title; or
* * *
fail, neglect or refuse to pay the tax, penalties or interestimposed by this Title;
* * *
Shall be guilty of a misdemeanor of the first degree and shallbe fined not more than one thousand dollars ($1,000.00) orimprisoned not more than six months (6 months) or both for eachoffense."
 {¶ 19} Dalton contends that the charging papers in this matter only allege a "failure to file/pay municipal income taxes", and that this language is insufficient to qualify as willful or intentional. Although the statute does not specifically include the element of intent, such a specific omission was likewise addressed by DeGolyer, supra, which found:
"It will be noted that the ordinance does not specificallymake intent an element of the offense. Yet, one of the words,`refuse,' necessarily implies wilfulness or intent. Without theelement of wilfulness or intent this provision of the ordinance,so far as it provides for imprisonment, must fall as beingviolative of the provisions of Section 15 of Article I."
 {¶ 20} Further, and as held in State v. Ross (1967),12 Ohio St.2d 37, where intent is a basic element of the offense, it will be considered a part thereof, even though the statute is silent as to intent. See, also, Cleveland v. Griswold Institute,Inc. (Apr. 11, 1985), Cuyahoga App. Nos. 48951 and 48952. Therefore, and in line with the holding of the Ohio Supreme Court, the requisite culpable mental state is outlined in the Bedford ordinance by use of the terms "fail, neglect or refuse."
 {¶ 21} This assignment of error lacks merit.
 {¶ 22} In his final assignment of error, Dalton contends the court erred in sentencing him to the maximum prison term along with a $1,000 fine.
 {¶ 23} R.C. 2929.22 lists the factors a trial court must consider when determining whether to impose imprisonment or a fine for a misdemeanor. A trial court abuses its discretion by failing to consider the statutory factors. See, Cincinnati v.Clardy (1978), 57 Ohio App.2d 153, 155. "Where the sentences are within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating criteria in the absence of an affirmative showing that it failed to do so." State v. Crouse (1987), 39 Ohio App.3d 18,20. This presumption applies, in the absence of a showing to the contrary, to a trial court's consideration of the statutory criteria listed in R.C. 2929.22. State v. Gilbo (1994),96 Ohio App.3d 332, 340.
 {¶ 24} Dalton cites to R.C. 2929.22(F) and alleges that a court abuses its discretion when it fails to consider whether a defendant will be able to pay the imposed fine without undue hardship. He alleges that he did not "stand in defiance or disrespect to the trial [sic] or his duty to pay taxes to the appropriate governmental agency," and that he has paid his taxes dutifully all his life. (Appellant's brief at 15).
 {¶ 25} First and foremost, we note that Dalton did not receive the maximum sentence as statutorily proscribed. The record reflects that Dalton was found guilty on two separate offenses, one for violating Bedford Ordinance 169.01 and a second for violating 169.07. As outlined under the violations section of the ordinance and contained in 171.05, each offense is a first degree misdemeanor and each violator, "shall be fined not more than one thousand dollars ($1,000.00) or imprisoned not more than six months (6 mos.) or both for each offense." Bedford Ord. 171.05, (Emphasis added.)
 {¶ 26} Moreover, when pronouncing sentence, the trial court found:
"[H]aving weighed the evidence and the demeanor of thewitnesses, it's possible to completely discredit everything thatMs. Lichvar and Mr. Dalton said as merely conspiracy to avoidpaying the tax.
 On the one hand they both testified that they have no money.She has to live in her car. He can't get his car repaired so hehas to have Ms. Lichvar take him to the Bureau of Motor Vehicles.On the other hand, they wait three months before they turn inthis ticket.
 I think that he, by his own testimony, relied on perhapsincompetent advice of accountants in making his decisions and Ithink that everything else is pretty much immaterial. He choseBedford as his domicile. He chose it deliberately to be hisdomicile for his purposes and to effectuate his purposes whichwas to defraud the City of Euclid or any other city of his taxesand now he owes the tax." (Tr. at 147).
 {¶ 27} Since Dalton was convicted on two offenses, the maximum sentence of incarceration would have been six months on each count, for a total of one year, and/or a $1,000 fine on each count, for a maximum fine of $2,000. Since the actual sentence received was a total of six months' imprisonment and a total $2,000 fine, Dalton did not receive the maximum possible sentence and, therefore, any challenge to his sentence on these grounds lacks merit.
 {¶ 28} The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Bedford Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., And McMonagle, J. concur
 APPENDIX ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT INFINDING THAT HE WAS A RESIDENT OF THE CITY OF BEDFORD FORRESIDENCE TAX PURPOSES, WHERE APPELLANT WAS NEVER ACTUALLY`DOMICILED,' ACCORDING TO OHIO LAW.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT INFINDING THE APPELLANT GUILTY ON THE SPECIFIC STATUTES AND, ASAPPLIED TO APPELLANT, SAID PROSECUTION AND CONVICTION WEREUNCONSTITUTIONAL.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTIN SENTENCING THE APPELLANT TO THE MAXIMUM TERM OF INCARCERATIONAND FINE CONSECUTIVE TO EACH OF THE TWO COUNTS."