[Cite as *State v. Harrison*, 2013-Ohio-1235.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

TODD D. HARRISION

      Defendant-Appellant

Appellate Case No.   25128

Trial Court Case No. 12-TRD-226

(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of March, 2013.

. . . . . . . . . . .

ROBERT B. COUGHLIN, Atty. Reg. #0003449, Municipal Prosecutor, 130 West Second Street, Suite 800, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

MICHAEL B. MURPHY, Atty. Reg. #0017992, 5241 Shiloh Springs Road, Dayton, Ohio 45426
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Todd Harrison, appeals from his conviction and sentence on one count of having an open container, a minor misdemeanor under Huber Heights General Offenses Code 527.09, and one count of having no operator's license, a misdemeanor of the first degree under Huber Heights General Offenses Code 335.01.  Following a bench trial, Harrison was sentenced to a fine of $5.00, court costs, 180 days in jail, with 170 days suspended, and one year's probation.

{¶ 2}    In support of his appeal, Harrison contends that the police lacked a reasonable suspicion for checking the status of his driver's license.  Harrison also contends that the trial court erred in finding him guilty of having no operator's license when he possessed a valid license that was suspended.

{¶ 3}    We conclude that the police officer had reasonable suspicion that Harrison was engaged in criminal activity.   The trial court erred, however, in finding Harrison guilty of having no operator's license.  Harrison had a license that was suspended, and his conduct did not fall within the ordinance under which he was found guilty.  Accordingly, the judgment of the trial court will be reversed and vacated as to that conviction and sentence, and Harrison will be discharged as to the offense of having no operator's license.  The judgment will be affirmed in all other respects.

I.  Facts and Course of Proceedings

{¶ 4}    The facts of the case before us are not disputed.  In the early morning hours of January 16, 2012, Huber Heights police officer, Michael Hawley, was on foot patrol around

Orbit's Skating Rink in Huber Heights, Ohio. Hawley's reason for being on foot was that the skating rink has large gatherings and people sometimes sit in their vehicles and use narcotics or drink alcoholic beverages. Hawley was in uniform at the time.

{¶ 5} At approximately 12:38 a.m., Hawley saw a black pickup truck pull from the road into an area on the east side of the skating rink. The driver backed up and pulled forward, and then parked the vehicle on the northeast side of the skating rink, about 30 yards from where Hawley was standing. Hawley observed an individual (later identified as Harrison) exit the driver's side of the vehicle and climb into the back bed of the truck. Harrison reached under a toolbox in the back of the truck and pulled out a bottle. He then pulled the top off the bottle and threw the cap towards the hood area of the truck. Harrison exited the bed of the truck, took a drink from the bottle, and walked back over to the driver's side. At that point, Harrison placed the bottle on top of the toolbox and began urinating.

{¶ 6} Hawley walked over to Harrison and said, "Excuse me." Harrison turned around and saw that Hawley was a police officer. At that point, Hawley identified the bottle as a Bud Light Beer bottle. He could also smell beer.

{¶ 7} The only other person in the truck was a female, who was sitting in the passenger side. Hawley obtained both of their identification cards. Upon checking Harrison's identification, Hawley discovered that Harrison's license had been suspended and that Harrison had not paid the reinstatement fee. Harrison's failure to reinstate after suspension occurred as the result of an administrative suspension for testing positive for driving under the influence.

{¶ 8} Hawley asked Harrison to follow him back to his cruiser, where he wrote up a summons. Hawley patted Harrison down for weapons, but did not arrest him. Hawley issued a

summons and citation to Harrison for an open container violation, failure to reinstate, and no operator's license. Harrison's passenger was arrested and taken to jail for an outstanding warrant.

{¶ 9} Harrison was represented by a public defender during the trial proceedings. However, Harrison also filed various pleading in the trial court on his own accord, only a few days before trial. These pleadings included a request for a bill of particulars, a demand for discovery, a motion "in demand for a jury trial," a motion for "speedy trial," a motion to withdraw counsel, and a motion to suppress. The trial court overruled the motions, and after hearing evidence, found Harrison guilty of the open container violation and of having no operator's license, and sentenced him accordingly. Harrison appeals from his conviction and sentence.

## II. Issues Pertaining to an Alleged Fourth Amendment Violation

{¶ 10} Harrison's first assignment of error states that:

The court erred in finding that a police officer who stops a person for urinating in public and having an open container in public can charge that person with failure to have a valid driver's license and driving under suspension when that person is not operating a motor vehicle, nor is he in the vehicle when stopped.

{¶ 11} As a preliminary matter, we note that there is lack of connection between the phrasing of Harrison's first assignment of error and the argument made under the assignment of error. The assignment of error focuses on the charges themselves, while the argument seems to center on whether the police had reasonable suspicion that Harrison was engaged in criminal

activity other than urinating in public and having an open container. The State has addressed the lawfulness of the search in its brief, and we will do the same, because that is the argument that Harrison appears to be making.

{¶ 12}    Harrison admits in his brief that Officer Hawley had sufficient reason to confront him and to issue a citation for violating the open container law and urinating in public. Harrison nonetheless contends that Hawley did not have reason to check his driver's license because the stop was not related to the operation of his vehicle.

{¶ 13}    In *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 11, the Ohio Supreme Court noted that;

> The Fourth Amendment imposes a reasonableness standard upon the exercise of discretion by government officials. *Delaware v. Prouse* (1979), 440 U.S. 648, 653–654, 99 S.Ct. 1391, 59 L.Ed.2d 660. "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660. To justify a particular intrusion, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 14}    The "intrusion" that occurred in the case before us was reasonably  warranted. Officer Hawley observed Harrison commit two violations of law, and properly  obtained and checked Harrison's identification. "[I]t is well established that an officer may ask a suspect to

identify himself in the course of a *Terry* stop." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.,* 542 U.S. 177, 187, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). In *Hiibel*, the United States Supreme Court also stressed that:

> Obtaining a suspect's name in the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere. *Id.* at 186-187.

{¶ 15} Accordingly, Officer Hawley was justified in asking for Harrison's identification. Furthermore, the authority Harrison cites in support of his argument is not on point. For example, in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), a patrolman testified that before stopping the defendant's vehicle, "he had observed neither traffic or equipment violations nor any suspicious activity, and * * * he made the stop only in order to check the driver's license and registration." *Id.* at 650-651. This is not the situation in the case before us, because Officer Hawley observed Harrison engaging in criminal activity.

{¶ 16} Likewise, in *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529 (10th Dist.), the police had no particular reason for questioning an individual who was sitting in a parked vehicle, and the individual gave the police an explanation for his presence. *Id.* at ¶ 3-4. Following this consensual encounter, the officers took the defendant's license, and while waiting for the license check to be completed, the defendant disclosed that he had a knife in his car. The information was not volunteered, however, but was in response to an officer's

questions. *Id.* at ¶ 6. After being charged with carrying a concealed weapon, the defendant successfully obtained suppression of the evidence. *Id.* at ¶ 2 and 7.

{¶ 17} The Tenth District Court of Appeals agreed with the trial court that the evidence should be suppressed. The court noted that:

> Even when police officers have a valid basis to initially detain the driver of a vehicle, the driver of the vehicle may not be detained further once that basis has been explained away, absent some specific and articulable facts that the detention was reasonable; the driver should be "free to continue on his way without having to produce his driver's license." * * *
>
> Here, when the officers took defendant's driver's license to check for warrants, they relied merely on their intuition and acted upon a hunch that something might be wrong; they could point to no specific articulable facts supporting a reasonable suspicion that defendant was involved in criminal activity. *Id.* at ¶ 22-23.

{¶ 18} The situation in the case before us is different. When Officer Hawley asked for Harrison's driver's license, he had specific articulable facts supporting a reasonable suspicion that Harrison was involved in criminal activity. Hawley saw criminal offenses being committed, and did nothing more than any officer would do in such a situation.

{¶ 19} Accordingly, the trial court did not err in concluding that the police acted lawfully. The first assignment of error is overruled.

III. Issues Pertaining to the Conviction for Having No License

**{¶ 20}** Harrison's second assignment of error states as follows:

The trial court erred in finding the defendant guilty of driving without a license when his license was suspended.

**{¶ 21}** Under this assignment of error, Harrison contends that the trial court erred in finding him guilty of having no operator's license. Harrison notes that he had been issued an operator's license, but the license was suspended at the time he was cited. Harrison, therefore, argues that he could not be found guilty of failing to have a license.

**{¶ 22}** Harrison was originally charged with failure to reinstate under R.C. 4510.21, and with having no operator's license, a violation of Huber Heights General Offenses Code 335.01(a)(1).

**{¶ 23}** R.C. 4510.21(A) states that:

No person whose driver's license, commercial driver's license, temporary instruction permit, or nonresident's operating privilege has been suspended shall operate any motor vehicle upon a public road or highway or any public or private property after the suspension has expired unless the person has complied with all license reinstatement requirements imposed by the court, the bureau of motor vehicles, or another provision of the Revised Code.

**{¶ 24}** Section 335.01(a)(1) of the Huber Heights General Offenses Code states that:

No person, except those expressly exempted under Ohio R.C. 4507.03, 4507.04, and 4507.05, shall operate any motor vehicle upon a public road or highway or any public or private property used by the public for purposes of vehicular travel or parking in this Municipality unless the person has a valid

driver's license issued under Ohio R.C. Chapter 4507 or a commercial driver's license issued under Ohio R.C. Chapter 4506.

**{¶ 25}** The trial court concluded that the failure to reinstate charge was duplicative of the city code, and chose to convict Harrison of having no driver's license. As noted, Harrison contends that he cannot be guilty of that charge because he did have a driver's license; the license was simply suspended.

**{¶ 26}** In support of his argument, Harrison relies on *State v. Williams*, 17 Ohio App.3d 105, 477 N.E.2d 656 (1st. Dist. 1984). In *Willams*, the defendant was charged with driving under suspension in violation of R.C. 4509.76, and with driving without a valid operator's license, in violation of R.C. 4507.02. After pleading no contest to driving under suspension, the defendant was convicted of that charge. *Id.* at 105.

**{¶ 27}** At the time, R.C. 4509.76 provided as follows:

"*No person whose license or registration or non-resident's operating privilege has been suspended* or revoked under sections 4509.01 to 4509.78, inclusive, of the Revised Code shall, during such suspension or revocation, drive any motor vehicle upon any highway * * *." *Id.* at 106 (Emphasis sic.)[1]

**{¶ 28}** After being convicted and sentenced for driving under suspension, the defendant in *Williams* subsequently pled no contest to the charge of driving without a license, which was a violation of R.C. 4507.02. The defendant was found guilty and was sentenced on that

---

[1] R.C. 4509.76 related to financial responsibility suspensions, which were subsequently covered by R.C. 4507.02(B)(1), and are now referenced in R.C. 4510.16(A). Similarly, suspensions for reasons other than financial responsibility were codified in 1984 in R.C. 4507.38, were re-codified and renumbered in 1986, in R.C. 4507.02(D), pursuant to Am. Sub. S. Bill 386, and are now codified in R.C. 4510.11(A). However, reference to these statutes and to those cited in footnote 3, *infra*, indicates that the Ohio Revised Code has consistently distinguished between operating or driving without a valid license and operating or driving while under suspension.

conviction as well. Later, the defendant obtained counsel, and argued that the convictions were manifestly inconsistent. However, the trial court refused to grant the defendant's motion for relief from the conviction. *Id.* at 105-106.

{¶ 29} At the time, R.C. 4705.02 stated that:

"No person * * * shall operate any motor vehicle upon a highway * * * unless such person, upon application, has been licensed as an operator or chauffeur by the registrar of motor vehicles under section 4507.01 to 4507.39, inclusive, of the Revised Code." *Id.* at 106.

{¶ 30} After reviewing the two statutes, the First District Court of Appeals reversed the conviction and ordered the defendant discharged. In this regard, the court stated that:

Facially, the two statutes would appear to describe wholly separate and disparate offenses: the latter proscribes operation without a license; the former forbids operation when a license has been suspended. The defendant argues that one cannot, by definition, be guilty at the same time of operating a vehicle under a suspended license and operating a vehicle without a license. Under these circumstances, he insists, the offenses are clearly mutually exclusive. If the defendant on April 17, 1983, possessed an otherwise valid operator's license, which clearly appears to have been the case, and driving privileges thereunder had earlier been suspended, as defendant concedes, the appropriate charge was R.C. 4509.76, not 4507.02. We agree. *Id.* at 106.

{¶ 31} Other districts, including our own, have taken the same approach, concluding that a person driving with a temporarily suspended license would be guilty of violating statues

prohibiting driving under suspension, but not statutes prohibiting driving without a valid license.

See, *e.g.*, *State v. Thacker*, 4th Dist. Scioto No. 1534, 1985 WL 11155, * 3 (Sept. 20, 1985); *State v. Kessler*, 6th Dist. Ottawa No. C.A. NO. OT-83-28, 1984 WL 7814, *1-2 (March 30, 1984); *State v. Lesley*, 2d Dist. Montgomery No. 9402, 1986 WL 2661 (Feb. 26, 1986); *State v. Schockley*, 12th Dist. Preble No. CA90-04-009, 1990 WL 210844, * 1-2 (Dec. 24, 1990); *State v. Logue*, 7th Dist. Belmont No. 97 BA 46, 2000 WL 179765, * 4 (Feb. 11, 2000); and *State v. Donkers*, 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, ¶ 88 (11th Dist.).

**{¶ 32}** In response to Harrison's argument, the State focuses on our decision in *State v. Lesley*, 2d Dist. Montgomery No. 9402, 1986 WL 2661 (Feb. 26, 1986). The State's contention in this regard seems to be that our discussion in *Lesley* clarifies the true meaning of *Williams*. According to the State, the holding in *Williams* was merely intended to prevent defendants from being charged twice for the same act. The State argues that the trial court complied with this purpose by choosing between the two offenses and convicting Harrison only of having no operator's license.

**{¶ 33}** In *Lesley*, the defendant had been convicted of operating a motor vehicle while under suspension and of driving with an expired license. *Id.* at * 1. On appeal, the defendant argued that he could not be convicted for two offenses arising from the same conduct, when the statutes described mutually exclusive conduct. *Id.* We agreed with the defendant.

**{¶ 34}** We first relied on a prior case, in which we had held that "the defendant could not be convicted of a driving while under suspension in violation of Dayton City Ordinance 71.19 where there was no evidence that the defendant ever had a valid driver's license to 'suspend.' " *Id.* at * 2, citing *City of Dayton v. McClain*, 2d Dist. Montgomery No. 5962, 1979

WL 208358 (Jan. 8, 1979).

**{¶ 35}** We then quoted from *Williams* at length, and concluded that:

We agree with the court in *Williams* that violations of driving while under suspension and operating without a license are mutually exclusive. See *Williams*, supra at 106. The court may convict and sentence on one but not both offenses arising out of the same act. The first assignment of error is Sustained. *Id.* at * 3.

**{¶ 36}** The State is correct when it states that Harrison could not be convicted of two mutually exclusive offenses arising from the same conduct. However, the State (and the trial court) failed to examine the conduct in question to see which of the mutually exclusive offenses applies to Harrison's conduct. There is nothing either in *Lesley* or later cases from our district to suggest that defendants should be convicted of crimes whose elements fail to fit their conduct.

**{¶ 37}** *State v. Gilbo*, 96 Ohio App.3d 332, 645 N.E.2d 69 (2d Dist.1994) is one such case. In *Gilbo*, we considered the validity of two of the defendant's convictions, which were based on charges of driving without a valid Ohio operator's license. *Id.* at 337.[2] According to the facts, the defendant's license had been suspended by the Ohio Bureau of Motor Vehicles, based on his failure to pay a fine for a speeding ticket in Pennsylvania. *Id.* at 335.

**{¶ 38}** In considering the validity of the convictions, we noted that "t]he elements of the offense of driving without a valid operator's license are different from the elements of the offense of driving under suspension." *Id.* at 337. We then stated that:

In *State v. Lesley* (Feb. 26, 1986), Montgomery App. No. 9402, unreported, 1986 WL 2661, this court adopted the reasoning of the Hamilton

---

[2] The defendant had other convictions that are not relevant for purposes of our discussion.

County Court of Appeals, *State v. Williams* (1984), 17 Ohio App.3d 105, 107, 17 OBR 167, 169, 477 N.E.2d 656, 658, and held that " '[o]nce having been issued an operator's license which is otherwise valid and unexpired, one does not violate R.C. 4507.02[ (A) ] by operating a vehicle while such license is suspended under R.C. Chapter 4509.' " We further cited with favor *Cincinnati v. Tribble* (1983), 7 Ohio Misc.2d 46, 7 OBR 310, 455 N.E.2d 27, which states the broader holding that a defendant cannot be found guilty of a violation of driving without a license if he has a license, although it is under suspension by the BMV.

Accordingly, the state had to offer an explanation of circumstances as to the driving-without-a-valid-operator's-license charges which was sufficient to support a finding that Gilbo did not have a valid Ohio operator's license. The state failed to meet its burden. All of the evidence before the trial court tends to show that Gilbo did have a valid operator's license which was merely under suspension. Therefore, the state's explanation of circumstances was not sufficient to support each of the elements of the driving-without-a-license charges, and Gilbo had a right to be found not guilty of those offenses. *Gilbo*, 96 Ohio App.3d 332, 338, 645 N.E.2d 69 (2d Dist.1994).

{¶ 39} The licensing and financial responsibility statutes have been amended, recodified, and renumbered at various points, but the legislature has consistently retained the distinction between operating or driving a vehicle without a valid license and driving under suspension. *See* the statutes cited in footnote 1, *supra*, and footnote 3, *infra*. The versions in effect when Harrison was charged continue the distinction. *Compare* R.C. 4507.02(A)(1)

(driving without a valid license) and R.C. 4510.11(A) (driving under suspension). Likewise, R.C. 4510.21(A) refers to failure to reinstate a license after suspension, which is an offense that differs from failing to have a license.

**{¶ 40}** Huber Heights General Offense Code 335.01(a)(1), under which Harrison was convicted, is similar to R.C. 4510.12(A)(1), which stated at the time of Harrison's conviction that:

> No person, except those expressly exempted under sections 4507.03, 4507.04, and 4507.05 of the Revised Code, shall operate any motor vehicle upon a public road or highway or any public or private property used by the public for purposes of vehicular travel or parking in this state unless the person has a valid driver's license issued under Chapter 4507. of the Revised Code or a commercial driver's license issued under Chapter 4506. of the Revised Code.[3]

**{¶ 41}** Thus, whether Harrison were charged under the local ordinance or under R.C. 4510.11(A)(1), the conclusion would remain the same. Consistent with existing authority from this district and others, Harrison could not be convicted of failing to have a driver's license, because he did, in fact, have a license. His license was simply suspended, and he had failed to pay the reinstatement fee.

**{¶ 42}** Accordingly, the trial court erred in finding Harrison guilty of driving without a license. Harrison's second assignment of error is sustained.

---

[3] Like the other statutes discussed in this opinion, the statute pertaining to operating or driving a motor vehicle without a license has been amended, re-codified, or renumbered on various occasions. See, *e.g.*, R.C. 4705.02(1984); R.C. 4705.02(A) (1986); R.C. 4510.11(A)(1)(2002). The basic wording and interpretation of the statute has remained consistent.

IV.   Conclusion

{¶ 43}   Harrison's first assignment of error having been overruled, and his second assignment of error having been sustained, the judgment of the trial court is affirmed with respect to the conviction and sentence for having an open container, and is reversed and vacated as to the conviction and sentence for driving without a license.   Harrison will be discharged as to the latter offense.

. . . . . . . . . . . . .

DONOVAN, J., concurs.
HALL, J., concurs in judgment.

. . . . . . . . . . . . .

Copies mailed to:

Robert B. Coughlin
Michael B. Murphy
Hon. James A. Hensley, Jr.