OPINION
{¶ 1} The State of Ohio appeals from an order suppressing evidence upon the ground that it was obtained as the result of an unlawful stop. The State argues that the trial court erred by finding that there was no reasonable and articulable suspicion to justify the traffic stop. Based upon our review of the record, which contains conflicting evidence, we conclude that there is evidence in the record from which the trial court could find that it was obvious to the police officer following defendant-appellee Brian Jackson that Jackson was not violating any traffic laws, so that there was no basis for the stop. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} At about 1:15 a.m., in June, 2005, Dayton Police officer Patrick Bell began following a car driven by Jackson. Jackson was driving east on Lakeview Avenue. Bell had no basis for stopping Jackson at this point, but Bell and his partner ran Jackson's license plate number, which did not provide a basis for making a stop. The car was registered to a female. Although Jackson did not have a valid driver's license, this was not discovered until after Jackson was stopped and gave Bell his social security number.
 {¶ 3} A map introduced in evidence at the suppression hearing is attached to this opinion. In Bell's written report, he indicated that Jackson made a right turn from Lakeview Avenue onto Blanche Street. At the hearing, Bell testified that he was mistaken in his written report, that Jackson actually turned right from Lakeview Avenue onto Groveland Avenue, which is the street shown immediately east of Blanche Street on the map. Jackson, who also testified at the hearing, testified that he turned right from Lakeview onto Blanche Street, the way he usually drives home, "because when you go down Groveland there's a waiting period. If you don't make the light it's a long waiting period until the light change. You've got like little pot holes that's all right there. Do you know what I'm saying? I've done tore a car up like that before crossing through here."
 {¶ 4} According to Jackson, after he turned south on Blanche Street, he turned left on Germantown Street, and then turned right on McArthur Avenue, which is a continuation of Groveland Avenue after that street intersects Germantown. The significance of this discrepancy in the testimonies of Bell and Jackson is that the traffic violation that Bell cites as the basis for the stop allegedly occurred as Jackson turned south onto Groveland Avenue:
 {¶ 5} "* * *. As he was making the right turn he was so abrupt that he couldn't even make it into the southbound lane of traffic. He crossed over into the northbound lane of traffic and he was crossing double yellow lines and then brought it back into his lane of traffic."
 {¶ 6} According to Bell, this failure to remain within marked lanes was the basis for turning on his overhead lights and stopping Jackson. Bell acknowledged that there were no double yellow lines on Blanche Street at the intersection with Lakeview Avenue. In fact, that is how he decided that he had been mistaken in his written report:
 {¶ 7} "Q. When did you know that you had made a mistake in terms of the street that the defendant turned on in your report? When did you know that you had made a mistake?
 {¶ 8} "A. I think I discovered it when they came to court on the first time and I wasn't here and they said that there was no double yellow lines on Blanche and I said I know there was double yellow lines and I went back to the area and discovered that it wasn't Blanche and that it was Groveland. I knew that because there were no turns after the turn on Groveland through the intersection. I knew that we had not made the left turn from Blanche onto Germantown so I knew that it was Groveland and Groveland has the double yellow lines and Blanche does not."
 {¶ 9} Furthermore, the State stipulated at the suppression hearing "that there were no double yellow lines at the intersection of Blanche and Lakeview."
 {¶ 10} Jackson's testimony concerning his turn onto Blanche Street and subsequent events culminating in the stop is worth quoting at length, because the trial judge, who was the finder of fact, made it clear that he credited Jackson's testimony.
 {¶ 11} "Q. And when you made that turn on Blanche did you have any trouble negotiating the turn?
 {¶ 12} "A. On Blanche it's kind of being repaired too. There's cars on both lanes so we turned and it's like on one side of the street there's like a little (inaudible) of it and then there's some concrete so I turned (inaudible) turn and went around the little pot hole thing where it got the higher part onto the smooth part and came back around and came straight.
 {¶ 13} "Q. So because of the nature of the way the roadway was at that point you made a wider turn than would [sic] if they wouldn't have been working on it or if you didn't have the potholes?
 {¶ 14} "A. Yes.
 {¶ 15} "Q. And then you get down to Blanche and Germantown and you make a left?
 {¶ 16} "A. Yes.
 {¶ 17} "Q. I hope you made a stop there?
 {¶ 18} "A. Yes you've got to make a stop because they are repairing the street on the other side of Germantown.
 {¶ 19} "Q. And then you made a left and you don't go too far until you get to —
 {¶ 20} "A. Groveland and McArthur.
 {¶ 21} "Q. Right. Do you remember if you had to wait on the light there?
 {¶ 22} "A. No I didn't have to wait on the light it was already green.
 {¶ 23} "Q. And did you notice that the police were also coming down Blanche?
 {¶ 24} "A. Yeah I knew they was behind me.
 {¶ 25} "Q.O.K. You knew that they were right behind you?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. And then you traveled on until you got to where you make that turn there —
 {¶ 28} "A. On McArthur or Revels.
 {¶ 29} "Q.O.K. Revels.
 {¶ 30} "A. Ugh huh.
 {¶ 31} "Q. And how far is Revels after you pass the corner of Germantown and McArthur?
 {¶ 32} "A. I'd say about seventy-five feet.
 {¶ 33} "Q. Seventy-five feet.
 {¶ 34} "A. Yeah a good seventy-five to a hundred feet.
 {¶ 35} "Q. Not very far?
 {¶ 36} "A. No.
 {¶ 37} "Q. Then you make a right hand turn there?
 {¶ 38} "A. On Revels and a left on —
 {¶ 39} "Q. How far do you go on Revels?
 {¶ 40} "A. You go up the hill like a block or probably about another hundred feet and then it's the first house right there. The street Trotter Court is like a circle. It's a dead end so it's the first house right there on the left hand side.
 {¶ 41} "Q. Did you become aware during this time that the police had engaged there [sic] emergency lights?
 {¶ 42} "A. I think they hit their lights probably towards after I passed (inaudible) the street. Right after Huffy's but I was going home so I — I've had accidents [sic] with the police before in my lifetime so I wanted to make it to my house so my girl and her mom knew what was going on.
 {¶ 43} "Q. Did you increase your speed at all?
 {¶ 44} "A. No.
 {¶ 45} "Q. Were they able to maintain their distance between them and you between that time and when you got home?
 {¶ 46} "A. Yeah.
 {¶ 47} * * *
 {¶ 48} "Q. Mr. Jackson, you indicated that you did see the lights and sirens of the police department somewhere around Sage?
 {¶ 49} "A. Yeah I seen the lights. That's when they initiated the lights.
 {¶ 50} "Q. And your home is a couple of streets down from there?
 {¶ 51} "A. Up the street.
 {¶ 52} "Q. Up the street?
 {¶ 53} "A. Yes.
 {¶ 54} "Q. And you heard the testimony, did you not, that they activated those at the intersection of Germantown off of Groveland?
 {¶ 55} "A. Excuse me?
 {¶ 56} "Q. You heard the police officer testify that he activated them at the intersection of Groveland and Germantown? But you are saying that you didn't see the lights and sirens until somewhere around Sage?
 {¶ 57} "A. Yes."
 {¶ 58} The stop occurred in Jackson's driveway. Besides discovering, after running Jackson's social security number on their computer, that Jackson had a suspended driver's license, Bell's partner discovered a baggie of marijuana and some money on his person. A search of the vehicle resulted in the seizure of three more bags of marijuana. All of the marijuana found amounted to 114 grams.
 {¶ 59} Jackson was arrested and charged with Drug Abuse, Driving Without a Valid License, Driving Under Suspension, and Failure to Remain Within Marked Lanes. He moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court found Jackson's motion well-taken, and ordered the evidence suppressed.
 {¶ 60} From the order of suppression, the State appeals.
 II {¶ 61} The State's sole assignment of error is as follows:
 {¶ 62} "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS EVIDENCE."
 {¶ 63} Although the trial court, in its hand-written entry granting the motion to suppress, did not set forth its reasoning, it gave its reasons orally from the bench, at the conclusion of the suppression hearing:
 {¶ 64} "All right. In this case the court does find that the defendant Mr. Jackson was cited under the wrong section. Driving in marked lanes does not apply to the facts in this case where it would stipulate [sic] that the roadway did not have lane markings. The testimony as to driving and swerving to the left side of the lane, or the street rather, was explained by Mr. Jackson because of the conditions of the road at that point. Accordingly, the court finds that the stop was made without reasonable grounds and did not provide probable cause for the arrest. The court would grant the motion to suppress in this case."
 {¶ 65} We conclude that the trial court decided to credit Jackson's testimony, even where that testimony conflicted with the testimony of officer Bell. Because there is nothing inherently incredible in Jackson's testimony, and the trial court was present to hear and evaluate the testimony of both witnesses, we find no error in the trial court's decision to credit Jackson's testimony.
 {¶ 66} The crucial issue in the suppression hearing was whether the police officers had a reasonable, articulable suspicion to stop Jackson. The State bases its argument that the police officers did have a basis for the stop upon the ground that they witnessed a traffic violation, and also upon Jackson's failure to stop when signaled to do so.
 {¶ 67} We conclude that the trial court could find, from the evidence in this record, as it evidently did, that the police officers did not observe Jackson violating any traffic laws, and that the cause of any erratic driving they may have observed was apparent to them, being the condition of the roadway, which required Jackson to avoid potholes and construction. Although erratic driving for no apparent reason may furnish a basis for an investigatory stop — see, for example, City of Columbus v.Sayre (June 9, 1998), Franklin App. No. 97APC10-1435 — a police officer's observation of a motorist navigating his or her way reasonably around obstacles in the roadway that are apparent to the police officer does not give that police officer an excuse to make an otherwise unjustified traffic stop.
 {¶ 68} We further conclude, again based upon Jackson's testimony, which the trial court evidently credited, that the police officers had no reasonable basis for suspecting that Jackson was failing to comply with an order or signal of a police officer or operating his motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal" to stop, in violation of R.C. 2921.331(B). Although evidence sufficient to prove guilt of this offense beyond reasonable doubt was not required, we conclude that the trial court, based upon Jackson's testimony, could find that the officers lacked even a reasonable and articulable suspicion that Jackson was attempting to elude them or flee from them, as opposed to choosing a suitable spot to stop after proceeding a short distance at a reasonable speed.
 {¶ 69} The State's sole assignment of error is overruled.
 III {¶ 70} The State's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 . . . . . . . . . . .
Grady, P.J., and Brogan, J., concur.