[Cite as *State v. Maxwell*, 2014-Ohio-3062.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2013-CA-63 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. TRC-1302625 |
| v. | : | |
| | : | |
| CORY MAXWELL | : | (Criminal Appeal from |
| | : | Fairborn Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of July, 2014.

. . . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. #0076747, Prosecutor's Office, 1148 Kauffman Avenue, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

CHRISTOPHER R. BUCIO, Atty. Reg. #0076517, Roberts, Kelly & Bucio, 10 North Market Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Cory Maxwell appeals from his conviction and sentence for

Operating a Motor Vehicle While Under the Influence of Alcohol, in violation of R.C. 4511.19(A)(1), a misdemeanor of the first degree. Maxwell contends that the trial court erred in overruling his motion to suppress evidence, because the police officer did not have probable cause to initiate a traffic stop.

{¶ 2} We conclude that the trial court erred in overruling Maxwell's motion to suppress. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

**I. Maxwell Is Stopped for a Marked Lanes Violation when He Straddles**

**the Center Dotted Line During his Move to the Right-Hand Lane**

{¶ 3} At around 3:00 a.m. in late March 2013, Beavercreek Police Officer Barry Wisecup was traveling westbound on Colonel Glenn Highway. Officer Wisecup witnessed Maxwell, who was in the left lane, turn on his right turn signal and proceed to straddle the center dotted line for 50-100 feet before moving over into the right lane. Maxwell left his right turn signal on for approximately 300 yards and then made a right turn onto an exit ramp that led to a closed entrance to Wright Patterson Air Force Base. About halfway down the exit ramp, Officer Wisecup initiated a traffic stop of Maxwell's vehicle for a violation of Beavercreek Ordinance § 72.008, the Marked Lanes Ordinance.

{¶ 4} When Officer Wisecup reached Maxwell's window, he noticed that Maxwell exhibited a strong odor of an alcoholic beverage. Officer Wisecup also noticed that Maxwell's eyes were glassy and bloodshot and that Maxwell slurred his speech. Maxwell admitted to having earlier consumed one shot of liquor. Officer Wisecup had Maxwell exit the vehicle and

administered field sobriety tests.   Maxwell was then arrested.

## II. Course of the Proceedings

{¶ 5}   Maxwell was charged with Operating a Motor Vehicle While Under the Influence of Alcohol, in violation of R.C. 4511.19(A)(1), a first-degree misdemeanor, and a violation of Beavercreek Ordinance § 72.008, a minor misdemeanor.

{¶ 6}   Maxwell filed a motion to suppress "all evidence arising from the stop and arrest of Defendant."   The trial court overruled Maxwell's motion.   Maxwell then entered into a plea agreement with the State whereby he agreed to plead no contest to the charge of Operating a Motor Vehicle While Under the Influence of Alcohol in return for the State dropping the Marked Lanes charge.   The trial court found Maxwell guilty of the OVI offense and sentenced him to one year in jail.   The trial court suspended 263 days of the jail sentence, imposed a $1,000 fine, and suspended Maxwell's driver's license for three years.

{¶ 7}   From the judgment of the trial court, Maxwell appeals.

## III. Officer Wisecup Did Not Have Probable Cause

## to Initiate a Traffic Stop of Maxwell

{¶ 8}   Maxwell's sole assignment of error states:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 9}   In deciding a motion to suppress, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.

*State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 10} We conclude that the trial court's findings of fact are supported by the testimony of Officer Wisecup. We must determine whether Officer Wisecup's testimony leads us to the same legal conclusion that the trial court reached regarding the propriety of the traffic stop. Based on Officer Wisecup's testimony, the trial court concluded:

Testimony from the officer indicated that while on patrol just before 3:00 a.m. on March 29, 2013, he observed the Defendant's vehicle straddling the center dotted line for several feet and then make a left to right lane change leaving his right turn signal on for approximately 300 yards. This happened in a commercial area where the businesses were not open at the time in the early morning, so it would be unusual for the Defendant to have on his turn signal for that distance if he intended to turn into one of the business establishments. As it turned out, he turned onto a closed exit ramp to WPAFB.

Taking all the circumstances together (time of early morning; straddling dotted line; lane change left to right; turn signal on for 300 yards with no open businesses to access) the officer had sufficient cause to initiate a traffic stop of the

Defendant. After the stop, the strong odor; bloodshot, glassy eyes, and his admission to one shot of liquor was sufficient justification to conduct the field sobriety tests. The results of those field sobriety tests gave the officer sufficient probable cause to arrest the Defendant.

Dkt. 41.

{¶ 11} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." (Citations omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), at paragraph one of the syllabus. Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *Mays* at ¶ 8.

{¶ 12} Police may stop a vehicle based on probable cause that a traffic violation, even a minor one, has occurred or is occurring. *State v. Frazee*, 12th Dist. Warren No. CA2004-07-085, 2005-Ohio-3513, ¶ 11, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). Indeed, "evidence of a defendant's marked lane violation establishes reasonable suspicion or probable cause for a traffic stop." (Citations omitted.) *State v.*

*McEldowney*, 2d Dist. Clark No. 06-CA-138, 2007-Ohio-6690, ¶ 38.

{¶ 13} The police officer in this case initiated a traffic stop of Maxwell's vehicle for violating Beavercreek Ordinance § 72.008, which provides, in part:

(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within the municipality traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from the lane or line until the driver has first ascertained that the movement can be made with safety.[1]

{¶ 14} Maxwell contends that his actions in this case do not constitute a violation of the Marked Lanes Ordinance. Officer Wisecup presented the only testimony regarding Maxwell's driving. Officer Wisecup testified as follows regarding his decision to initiate the traffic stop:

Q. Okay, what drew your attention -- if you could describe in detail where you were when Mr. Maxwell drew your attention.

A. Okay. I was going westbound on Colonel Glenn, I'd be coming from the area of Grange Hall Road traveling towards Riverside. I noticed Mr. Maxwell's vehicle in front of my cruiser, I noticed as he made a lane change he straddled – continually straddled the center line for several feet, Mr. Maxwell then left his turn signal on for approximately three hundred yards and ended up making a right-hand turn into a closed exit which led to Wright Patt Air Force Base.

---

[1] The language in Beavercreek Ordinance § 72.008(A)(1) is virtually identical to the language in R.C. 4511.33(A)(1).

* * *

Q. Okay. And you indicated that Mr. Maxwell, when you initially came upon him, straddled the center dotted line?

A. The center dotted line, correct.

Q. Was there anything in the road that would have impeded his ability to make the lane change all in one movement?

A. There was nothing that I saw.

Q. How long of a time frame did he straddle the line, a couple of seconds or - -

A. I would say at least for a couple of seconds. It was enough to draw my attention to realize that it wasn't your typical lane change, that it felt out of the ordinary.

Q. And then you indicated that – did he have his right turn signal on at the time the lane movement was made?

A. I believe so, yes.

Q. And once he made it into the right-hand lane, the turn signal stayed on?

A. It did.

Q. And you indicated that he went three hundred yards?

A. I approximated three hundred yards.

* * *

Q. Did the – his driving behavior factor into your decision at all [to arrest

him]?

A. It did. I just felt like a typical lane change is smooth as where Mr. Maxwell continued to travel down the center line and I found that uncommon with driving behavior.

Tr. 9-11, 21-22.

{¶ 15} Officer Wisecup further testified regarding his decision to initiate a traffic stop:

Q. Okay. Now, is there any violation of any statute to turn your right turn signal –

A. Absolutely not. It was just unusual behavior.

Q. Well, do you feel his unusual behavior is in violation of any – (inaudible) – or statute?

A. No.

Q. Okay. So you've indicated that the – the straddling was one time, correct?

A. Correct.

Q. For a short time period – short in terms of distance?

A. Distance, over – averaging forty-five mile-an-hour speed limit, I would say he straddled it for fifty, a hundred feet.

Q. Okay. And that would be just a couple of seconds?

A. Within a few seconds, yeah.

Id. at 26-27.

{¶ 16} Beavercreek Ordinance § 72.008 provides that a driver must remain within the

lane markings "as nearly as is practicable" and that a driver shall not move from a lane "until the driver has first ascertained that the movement can be made with safety." The testimony of record establishes that Maxwell turned on his right-turn signal and then proceeded to change lanes from the left-hand lane to the right-hand lane, and that during this change in lanes he straddled the center dotted line for approximately 50-100 feet, all while traveling a speed of 45 miles per hour.

{¶ 17} Officer Wisecup did not identify any of Maxwell's actions as being a violation of the Marked Lanes ordinance. Rather, Officer Wisecup testified that Maxwell's lane change "wasn't your typical lane change" and that "it felt out of the ordinary." Tr. 11. He based this solely on the fact that Maxwell straddled the center line for approximately 50-100 feet. This does not seem like a great distance, especially when one considers that Maxwell was traveling 45 miles per hour. Simple math reveals that Maxwell was traveling 66 feet per second,[2] which means he straddled the center line for between 0.75 and 1.5 seconds while making his lane change from the left-hand lane to the right-hand lane. In short, this is not a case where a driver was weaving between lanes, crossing solid center lines on a highway, or otherwise violating the marked lanes law. Rather, Maxwell straddled a center dotted line for no more than a couple of seconds while changing lanes.

{¶ 18} Furthermore, a safe driver, allowing for the possibility that there may be a vehicle behind him in the lane to his right that is within his blind spot, may wisely prefer a less abrupt lane change, to give a driver in his blind spot an opportunity to either honk the horn, or slow

---

[2] The calculation is 45 miles per hour multiplied by 5,280 feet in a mile divided by 3600 seconds in an hour equals 66 feet per second.

down to avoid a collision.

{¶ 19}  Officer Wisecup conceded that Maxwell's act in leaving on his right-turn signal for an additional 300 yards after changing lanes was not a violation of any statute or traffic ordinance.   Again, mathematically, it would have taken no more than 15 seconds to traverse 300 yards at 45 mph.   And even if Maxwell was slowing down to make his right turn, he would have left his right-turn signal on for no more than about 30 seconds.   Many motorists would not take the trouble to turn their right-turn signal off after making a lane change if anticipating a subsequent right turn in 300 yards.

{¶ 20}  The trial court cited the fact that Maxwell exited the highway at an entrance to Wright Patterson Air Force Base that was closed at that hour.   This was not a violation of the traffic laws.   Maxwell could have had any number of legitimate reasons for pulling off the highway.   He may have thought he was lost and been wanting to check directions, for example. Officer Wisecup conceded that it was "very possible" that someone could have exited Colonel Glenn Highway without knowing that there was no access to the Air Force Base at that point.

{¶ 21}  Based on the facts before us, we conclude that Officer Wisecup's testimony that the lane change "wasn't your typical lane change," and that "it felt out of the ordinary," is insufficient to establish probable case to initiate a traffic stop for an alleged violation of Beavercreek's Marked Lanes Traffic Ordinance.   Although Officer Wisecup never claimed to have initiated the stop on suspicion of OMVI, we also conclude that on the record before us, the aspects of Maxwell's driving to which Wisecup testified were insufficient to give rise to a reasonable, articulable suspicion of impaired driving.   Therefore, the trial court should have sustained Maxwell's motion to suppress evidence resulting from the traffic stop.

**{¶ 22}** Maxwell's sole assignment of error is sustained.

## IV. Conclusion

**{¶ 23}** Maxwell's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN J., concurs.

WELBAUM, J., dissenting.

**{¶ 24}** I respectfully dissent with the majority's holding that Officer Wisecup's testimony regarding Maxwell's driving was insufficient to give rise to a reasonable, articulable suspicion of impaired driving.

**{¶ 25}** It is well-established that "[a] police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]." *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 14, citing *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, at ¶ 13. (Other citation omitted.) An officer's "reasonable suspicion may be based on behavior that is not illegal." *State v. Worthham*, 145 Ohio App.3d 126, 129, 761 N.E.2d 1151 (2d Dist.2001), citing *United States v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). (Other citation omitted.) In fact, in *State v. Hilleary*, 2d Dist. Miami No.

88-CA-5, 1989 WL 55637, *3 (May 24, 1989), this court stated that:

> erratic driving alone was a sufficient basis for an articulable and reasonable suspicion, justifying an investigative stop to determine the reason for the erratic driving, under the holdings of *Terry* and [*Freeman*]. The officer may have had a duty, morally at least, to investigate the cause of the weaving, in order to protect the public, and even [the defendant], for that matter, against such possible causes as the driver being unduly mentally fatigued or sleepy, or even some mechanical defect of the automobile.

*Id.*, *see, also*, *State v. Green*, 2d Dist. Greene No. 2008 CA 104, 2009-Ohio-2540, ¶ 11; *State v. Jackson*, 2d Dist. Montgomery No. 21300, 2006-Ohio-1971, ¶ 67; *State v. Weierman*, 2d Dist. Montgomery No. 18853, 2001 WL 1598048, * 5 (Dec. 14, 2001).

{¶ 26} Other appellate courts of Ohio have agreed that erratic driving provides a sufficient basis for an investigative stop. *See, e.g., City of Columbus v. Sayre*, 10th Dist. Franklin No. 97APC10-1435, 1998 WL 303903, *2 (June 9, 1998) ("an officer may stop a motorist to investigate the cause of erratic driving even if the driving did not rise to the level of a traffic violation"), citing *State v. Aleshire*, 10th Dist. Franklin No. 85AP-869, 1986 WL 8671, *3 (Aug. 5, 1986); *State v. McCulloch*, 6th Dist. Wood No. WD-87-56, 1988 WL 51468, *2 (May 20, 1988) ("[e]rratic driving, in and of itself, is an articulable reason for a police officer to stop a vehicle"); *State v. Miller*, 4th Dist. Gallia No. 93 CA 20, 1994 WL 111333, *4 (Mar. 31, 1994) ("in driving under the influence cases, erratic driving usually forms the factual basis for an investigative stop").

{¶ 27} In the present case, Officer Wisecup's testimony regarding Maxwell's driving sufficiently demonstrates that his driving was erratic. Wisecup testified that as Maxwell moved

into the right-hand lane of travel, he "continually straddled the center line for several feet." He testified that this lasted for "a couple of seconds," and ultimately drew his attention to Maxwell's vehicle. Trans. (Nov. 27, 2013), p. 10-11. Wisecup also testified that the lane change "felt out of the ordinary." *Id.* at 11. In addition to the lane straddling, Wisecup testified that he observed Maxwell's turn signal blinking for 300 yards after he had already moved into the right lane. *Id.* at 11. Then, when Maxwell finally made a right-hand turn, he turned into a closed exit ramp, which "had been closed for some time." *Id*. at 12. All of Maxwell's actions are out of the ordinary and can be fairly described as erratic driving.

{¶ 28} It should also be noted that "[w]e determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554 at ¶ 14, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. Here, Wisecup observed Maxwell driving erratically at two or three o'clock in the morning in a business area where everything was closed. Trans. (Nov. 27, 2013), p. 23. Under the totality of those circumstances, it was reasonable for Wisecup to suspect that Maxwell might be driving while impaired. Given this reasonable suspicion, Wisecup's investigatory stop of Maxwell was justified, and therefore, I disagree with the majority's decision holding otherwise.

. . . . . . . . . . . .

Copies mailed to:

Betsy A. Deeds
Christopher R. Bucio
Hon. Beth W. Root