The STATE of Ohio, Appellant,

v.

WORTHAM, Appellee.

[Cite as *State v. Wortham* (2001), 145 Ohio App.3d 126.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18782.

Decided Aug. 10, 2001.

128

*Laura L. Wilson*, Montgomery County Assistant Prosecuting Attorney, for appellant.

*Thomas G.E. Mathewson*, for appellee.

FREDERICK N. YOUNG, Judge.

The state of Ohio appeals the judgment of the Montgomery County Common Pleas Court suppressing crack cocaine found on Thomas Wortham.

On June 26, 1999, Sergeant Jackson ("Jackson"), a twenty-five-year veteran of the police force, was patrolling a section of Dayton Metropolitan Housing known as Parkside, an area known for drug activity. At approximately 1:00 a.m., Jackson came upon a vehicle stopped in the road with a crowd of ten to fifteen people standing to its side. Standing next to the driver's side window was a male wearing a red tee-shirt, blue shorts, and tan boots. Jackson could see that the driver had something that appeared to be paper in his hands. Jackson testified that in his experience this appeared to be a drug deal in progress.

As Jackson approached the vehicle, someone in the crowd shouted "police." The male standing next to the driver's side window looked up at the police and immediately began walking quickly away towards the apartment buildings. The vehicle also drove quickly away. Jackson followed the vehicle and radioed a description of the male on foot to Officer Oldham ("Oldham"). Jackson asked Oldham to stop the male so that he could be questioned regarding his behavior with the vehicle in the street. Jackson described the man, who was later identified as Thomas Wortham ("Wortham"), as a black male, wearing a red tee-shirt, blue shorts, and tan boots, and described where he was located and the direction he was headed.

Oldham came in contact with Wortham when Wortham came around the corner of a building and stopped abruptly upon seeing Oldham. Oldham testified that Wortham began looking around as if trying to find an escape route, so Oldham grabbed Wortham's waistband to prevent him from running. Oldham told Wortham that he needed to talk to him and brought Wortham to his cruiser.

Oldham wanted to place Wortham in the cruiser to detain him for questioning per Jackson's request. Therefore, Oldham needed to pat down Wortham for weapons. When Oldham reached the groin area, Wortham tensed and twisted away. During this patdown, Oldham was called to assist another officer with a fight. Because Oldham was unable to complete the patdown and yet still needed to detain Wortham for Jackson, Oldham handcuffed Wortham and placed him in the back of the cruiser. Oldham then left to provide assistance to the other officer.

Oldham returned to the cruiser in one to two minutes because the fight was under control by the time he got there. Upon his return to the cruiser, Oldham asked Wortham his name and Social Security number. Oldham ran the information on his computer and learned that an outstanding warrant existed for Wortham's arrest. Oldham informed Wortham that he was under arrest and with the assistance of other officers was able to fully pat down Wortham. During the patdown, the officers discovered a plastic bag containing crack cocaine on Wortham. As a result of this discovery, Wortham was indicted for possession of a controlled substance in violation of R.C. 2925.11(A). Wortham moved to suppress the drugs and a hearing was held on the motion on January 19, 2001. The trial court sustained the motion to suppress on March 20, 2001. The state of Ohio filed this timely appeal.

The state asserts the following assignment of error:

"The trial court erred in suppressing evidence seized incident to a lawful arrest."

In its brief, the state makes two distinct arguments for the admission of the evidence seized by Oldham.

a. The evidence is admissible as a *Terry* stop and investigation.

The state argues the trial court erred in suppressing the drugs because a reasonable suspicion existed for stopping Wortham, asking him his name and Social Security number, and checking this information in the computer. We agree.

An appellate court *de novo* reviews the question of whether a police officer has reasonable suspicion to make an investigatory stop. *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920–921. The state has the burden to demonstrate in the case of warrantless police stops that the police officer acted based on "an articulable and reasonable suspicion" that the individual is engaged in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889, 905–906. To determine if the police acted with reasonable suspicion, the court must consider the totality of the circumstances. *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621, 628–629. Moreover, reasonable suspicion may be based on behavior that is not illegal. *United States v. Sokolow* (1989), 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1, 11–12, citing *Reid v. Georgia* (1980), 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894–895. Since a *Terry* stop is an investigatory tool, it does not require certainty or probability that criminal activity is occurring, just a reasonable suspicion. *State v. Frank* (Feb. 18, 2000), Hamilton App. Nos. C–990079, C–990080 and C–990081, unreported, 2000 WL 192132, appeal dismissed (2000), 89 Ohio St.3d 1426, 729 N.E.2d 1197.

▉▉ Additionally, police officers are entitled to rely on information received from other police officers. *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604; *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 298, 720 N.E.2d 507, 511–512. If an officer detains an individual suspected of criminal behavior in reliance on information received from a fellow officer, who has a reasonable suspicion to make a stop, he need not have independent grounds for suspecting criminal activity but may rely on the information given via the dispatch. *Weisner, supra.* However, the state must show that the officer who provided the information had a valid reasonable suspicion of criminal activity. *Id.*

Additionally, the United States Supreme Court has held that detaining an individual pending further investigation is not inherently objectionable. *Michigan v. Summers* (1981), 452 U.S. 692, 701, 101 S.Ct. 2587, 2593–2594, 69 L.Ed.2d 340, 348–349. In *Summers,* the court specifically stated that a request for identification is permissible interrogation when one is detained for a *Terry* stop. *Id.* at 700–701, 101 S.Ct. at 2593–2594, 69 L.Ed.2d at 348–349. The court also stated that the suspect may be detained while the officer "confirm[s] the identification or determine[s] whether a person of that identity is otherwise wanted." *Id.*

▉ In the instant case, the trial court initially reasoned that Jackson did not have reasonable suspicion to make a *Terry* stop and thus could not authorize Oldham to detain Wortham. Oldham received a dispatch from Jackson's partner requesting that he stop and detain Wortham for questioning. Oldham testified that although he could not remember the exact wording used in the dispatch, it was his understanding that Jackson was requesting that he stop and question Wortham. Pursuant to *Weisner,* Oldham need not have seen suspicious activity if Jackson's dispatch was based on a reasonable suspicion of criminal activity. Therefore, we will turn our attention to whether Jackson had a basis for a reasonable suspicion of wrongdoing. Jackson observed Wortham at 1:00 a.m. standing next to the driver's side of a car stopped in the street in a high-crime, high-drug area, talking to the driver who appeared to have a piece of paper in his hands. Further, Jackson observed that when the police cruiser pulled up behind the car, someone shouted "police" and that Wortham looked up, saw the cruiser, and immediately started walking away and towards the apartments. Pursuant to Jackson's twenty-five years of experience, this appeared to be a drug transaction. We find that Wortham's behavior with the car in the street and immediately leaving the area when he saw the police gave Jackson a reasonable suspicion to stop Wortham and investigate his behavior in the street. Since Jackson had a reasonable suspicion to stop Wortham, Oldham was authorized pursuant to *Weisner* to stop and detain Wortham. Therefore, the trial court erred in determining that Jackson did not have a reasonable suspicion of wrongdoing to stop Wortham, and the judgment of the trial court on this issue is reversed.

■   Additionally, the trial court held that even if Jackson had a reasonable suspicion that would authorize Oldham's stop of Wortham, Oldham went beyond the permissible scope of a *Terry* stop by asking Wortham his name and Social Security number while Wortham was sitting in the back of the cruiser. Oldham only requested Wortham's name and Social Security number and ran a warrant check. Oldham had been informed that Jackson wanted a field investigation performed on Wortham, and Jackson had a reasonable suspicion warranting such an investigation. An individual's name and Social Security number and running a warrant check on that information is the preliminary portion of nearly all field investigations and inevitably would have been performed if Jackson had conducted the investigation. Oldham need not have known the details of what Jackson observed or suspected in order to know this information would be pertinent. When a supervising officer, who has a reasonable suspicion of wrongdoing, requests via a dispatch another officer to detain an individual for questioning, the subordinate officer behaves reasonably in obtaining the individual's name and Social Security number and in performing a warrant check on that information. Thus, we find that Oldham's request for and checking Wortham's name and Social Security number was reasonable behavior and permissible under *Terry*. Therefore, we reverse the judgment of the trial court on this issue.

■   Finally, the trial court reasoned in its decision granting the motion to suppress that Oldham exceeded the bounds of *Terry* by keeping Wortham handcuffed in the back of the cruiser while Oldham asked for and did a warrant check on Wortham's name and Social Security number. Wortham was initially placed in the cruiser when Oldham was called to assist other officers with a fight. Before placing Wortham in the cruiser, Oldham attempted to pat Wortham down for weapons, but Wortham twisted away from Oldham, preventing him from completing the patdown. Considering these events occurred in the dark at 1:00 a.m. in a high-crime, high-drug area in which individuals are frequently arrested for carrying concealed weapons, Oldham behaved reasonably in placing Wortham in the cruiser when he would not cooperate with the patdown. Although Oldham was "somewhat confident" that Wortham did not have a large weapon, such as a gun, on his person, Oldham reasonably could fear that Wortham might have other weapons under the circumstances. Therefore, we find that Oldham behaved reasonably in keeping Wortham handcuffed in the rear of the cruiser while he asked for and performed a warrant check on Wortham's name and Social Security number. We reverse the judgment of the trial court on this issue as well.

b. The evidence is admissible pursuant to *Dayton v. Click* (Oct. 5, 1994), Montgomery App. No. 14328, unreported, 1994 WL 543210.

Additionally, the state argues that the trial court erred in suppressing the drugs because pursuant to the *Click* line of cases a search of a person pursuant to

a lawful arrest warrant should not be suppressed even if the stop and detainment of that individual by the police is unlawful. Since we found that the detainment of Wortham was lawful, we need not address whether the evidence would be admissible pursuant to *Click*.

The state's assignment of error is sustained, the judgment of the trial court is reversed, and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

FAIN and GRADY, JJ., concur.