OPINION
{¶ 1} Michael Wood is appealing the judgment of the Montgomery County Court of Common Pleas, which convicted him of possession of crack cocaine in an amount of more than ten grams but less than twenty-five grams.
 {¶ 2} On December 13, 2001, several officers of the Dayton Police Department Drug Unit were conducting surveillance near a housing project known as Staley Courts that is located in the area of West Stewart Street and Wisconsin Boulevard. This is a known drug area where open air drug sales and other crimes often occur.
 {¶ 3} Detectives David House and Kevin Phillips were riding together in an unmarked car in plain clothes. The detectives pulled into an alley and saw Wood standing within two feet of a woman. Wood and the woman had their hands extended toward each other at waist level, but they were not holding hands. Wood and the woman noticed the vehicle and immediately lowered their hands, and Wood placed one of his hands behind his back. Additionally, Derrick Watson had been standing at the end of the alley looking up and down Wisconsin. Based upon the reactions of the individuals, the detectives believed that they had inadvertently interrupted a drug sale and that Watson had been acting as a lookout.
 {¶ 4} The detectives then backed out of the alley and continued on down the street. Detective House observed from the rear window Wood come out of the alley to see where the detectives' vehicle was going. The detectives pulled over and parked alongside the curb in the hopes that Wood or Watson would attempt to sell them drugs. Additionally, Detective House radioed to the uniform officers in the area what he had observed and his hopes that Wood or Watson would make contact with them. Eventually, Wood and Watson emerged from the alley and moved towards the unmarked vehicle.
 {¶ 5} Wood and Watson walked by the detectives, looking into the vehicle. At that point, the detectives recognized Watson from prior arrests and contacts with him. Wood and Watson continued walking away from the detective's vehicle and turned at the corner. The detectives then radioed the uniformed officers that one of the individuals was Watson and gave detailed descriptions of the clothing both Wood and Watson were wearing. Officers Timothy Braun and Sean Copley responded via the radio that they were entering the area in order to attempt to locate Wood and Watson. Momentarily, one of the uniformed officers relayed over the radio that Wood and Watson were in a vehicle at the intersection of Miami Chapel and Broadway.
 {¶ 6} When Officers Braun and Copley arrived on the scene, they found two men getting into the backseat of a white Buick LeSabre. The officers pulled behind the LeSabre, which suddenly began to back up. Officer Braun was forced to back the cruiser up approximately twenty five feet in order to avoid being struck by the LeSabre. The driver of the LeSabre then backed up into a parking lot at a restaurant. The officers then drove into the parking lot to stop the vehicle. The driver of the LeSabre was subsequently cited for improper backing.
 {¶ 7} As soon as the LeSabre stopped, Wood and Watson emerged from the vehicle. As Officer Braun approached Wood, he could smell a strong odor of burnt marijuana emanating from the vehicle. When Officer Braun attempted to speak to Wood, Wood put his hands in his pockets and attempted to walk away from the car. The officer stopped Wood and conducted a pat down search.
 {¶ 8} Wood repeatedly put his hands over his stomach during the pat down search, resulting in the officer's having to hold Wood's hands away. The officer then observed that Wood had a large bulge in the front of his hooded sweatshirt. When the officer patted down the area, he felt what he immediately recognized as a baggie of marijuana. The officer pulled the baggie out of Wood's pocket and found it contained four baggies of marijuana, three baggies of crack cocaine, and ten dollars. Wood was placed under arrest.
 {¶ 9} On December 20, 2001, Wood was indicted for possession of more than ten grams, but less than twenty-five grams of crack cocaine. Wood filed a motion to suppress, and a hearing on the motion was held on March 7, 2002. The trial court subsequently overruled the motion. On May 9, 2002, Wood entered a plea of no contest to the charge. Wood was then sentenced to a three year prison term and a two year driver's license suspension, both of which ran concurrently with the sentence imposed in another case. Wood has filed this appeal from his conviction.
 {¶ 10} Wood raises the following assignment of error:
 {¶ 11} "Whether the defendant's motion to suppress should have been granted by the trial court and have the evidence regarding the issue of possession of crack cocaine deemed inadmissible based on appellant's constitutional rights under the United States and Ohio Constitutions."
 {¶ 12} Wood argues that the trial court erred by overruling his motion to suppress the State's evidence against him. We disagree.
 {¶ 13} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 14} "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586,592, 639 N.E.2d 498.
 {¶ 15} A police officer may make an investigatory stop that is a seizure under the Fourth Amendment where the police officer has "an articulable and reasonable suspicion" that an individual is engaged in criminal activity. State v. Wortham, 145 Ohio App.3d 126, 129,2001-Ohio-1506. A seizure occurs where "a law enforcement officer, by means of physical force or show of authority, has in some way restrained a suspect's liberty such that a reasonable person would not feel free to walk away." State v. Castro (Sept. 20, 1995), Montgomery App. No. 14398. At a motion to suppress hearing, the State has the burden to demonstrate that the police acted with a reasonable, articulable suspicion, considering the totality of the circumstances. Id.
 {¶ 16} The state argues that the police had reasonable suspicion to frisk Wood pursuant to Terry v. Ohio (1968), 392 U.S. 1. To justify a pat down under Terry, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, supra, at 21. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. A Terry stop, moreover, is justified solely by "the protection of the police officer or others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 29. Officer Braun testified at the suppression hearing that he had initially approached Wood with the intention of conducting a Terry stop or field interview. Wood had exited a vehicle that had been driving erratically and smelled of burnt marijuana. Moreover, Wood matched the description of an individual believed to have been engaging in a drug deal that had been radioed in by plainclothes officers. When spoken to by Officer Braun, Wood put his hands in his pockets and attempted to leave the area. The officer informed him that he intended to conduct a pat down search and asked Wood to remove his hands from his pockets. When Wood removed his hands, he immediately raised the zipper on his coat farther up. As Officer Braun began to conduct the pat down, Wood continued to repeatedly bring his hands over his stomach area until the officer finally had to hold Wood's fingers with one of his hands. Officer Braun lowered the zipper back to its original position and at this point observed the large bulge in his coat. The officer was in a high crime, high drug area, where guns have been found on persons. Therefore, the officer patted down the bulge to ensure that it was not a weapon. Upon patting down the area, the officer immediately recognized the bulge as marijuana and removed the package from his sweatshirt. Once the baggie was removed, the officer could see that the baggie also contained crack cocaine.
 {¶ 17} We find the officer acted reasonably under the circumstances. Officer Braun had a reasonable suspicion that Wood had recently participated in a drug transaction. He had received a radioed call that Wood had been engaged in behavior consistent with participation in a drug transaction. Wood had been observed behaving suspiciously with the woman in the alley and exiting a car that smelled of burnt marijuana. Furthermore, the incident occurred late at night in a high crime, high drug area. These facts were sufficient to give Officer Braun a reasonable and articulable suspicion justifying the Terry stop of Wood.
 {¶ 18} Also, we do not find that the officer behaved inappropriately in conducting a pat down search of Wood. Wood's behavior in immediately putting his hands in his pockets when the officer approached him could have given the officer reason to fear for his safety as Wood may have had a weapon on his person. Also significant was the fact that Officer Braun was away from his cruiser and the officers were initially outnumbered four to two when they stopped Wood and Watson. After considering the circumstances and nature of the activity, we find that the officer was justified in patting down Wood where he had reason to believe that Wood might be carrying a weapon. We do not find that the officer conducted a warrantless arrest of Wood or that he exceeded the scope of a permissible pat down search. The trial court did not err in overruling Wood's motion to suppress. Wood's assignment of error is without merit and is overruled.
 {¶ 19} The judgment of the trial court is affirmed.
BROGAN, J. and WOLFF, J., concur.