[Cite as *State v. Mobley*, 2014-Ohio-4410.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                     :

    Plaintiff-Appellee                    :              C.A. CASE NO.    26044

v.                                                :              T.C. NO.    13CR2518/1
                                                                          13CR2518/2

CAMERON MOBLEY                                    :

    Defendant-Appellant                   :              (Criminal Appeal from
                                                                 Common Pleas Court)

                                                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____3rd____ day of ____October____, 2014.

. . . . . . . . . .

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SHAWN P. HOOKS, Atty. Reg. No. 0079100, 131 N. Ludlow Street, Suite 630, Dayton, Ohio 45420
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

    **{¶ 1}** After his motion to suppress was overruled, Cameron Mobley pled no

contest to one count of possession of heroin, a felony of the second degree. The trial court found him guilty and sentenced him to a mandatory term of three years in prison, suspended his driver's license for three years, and fined him $7,500. Mobley appeals from the trial court's denial of his motion to suppress evidence.

{¶ 2}     For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3}     At approximately 4:30 p.m. on August 15, 2013, Bryan Statzer of the Montgomery County Sheriff's Office, was working as a plain-clothes detective in an unmarked cruiser when he saw a silver Pontiac maneuver illegally around a school bus on Philadelphia Drive. Statzer radioed other deputies about the Pontiac's lane violation. Deputy Fred Zollers, who was in a marked cruiser nearby, spotted the Pontiac "less than a minute" after Statzer's broadcast. Zollers also observed that the Pontiac did not have a front license plate and that the windows of the vehicle had "extremely dark window tint." Because of the window tinting, Zollers could not ascertain how many people were in the car.

{¶ 4}     Deputy Zollers initiated a traffic stop. The driver (later identified as Anthony Lane) briefly continued driving after Zollers activated his lights, and turned onto another street before stopping. Zollers was curious as to why the car had stopped so slowly. When Zollers approached the vehicle and Lane opened his window, Zollers "immediately * * * smell[ed] the odor of burnt marijuana"; the odor "just hit [him] in the face." Mobley was a passenger in the vehicle.

{¶ 5}     Zollers asked for identification from both men, then asked Deputy Kyle Baranyi, who had also arrived at the scene, to run the identification information. Zollers

ordered Lane out of the vehicle and patted him down. When asked about the smell of marijuana, Lane stated that he had smoked a joint earlier in the day.

{¶ 6} Det. Statzer also arrived at the scene and notice a "strong odor of burnt marijuana emitting from the area around the vehicle" before he even walked up to it. After Statzer arrived, Zollers made contact with Mobley, who was still seated in the front passenger seat, and told him to step out of the vehicle. Mobley stepped out, handed a fast food bag to Zollers, and consented to being pat down for weapons. Zollers instructed Mobley to face the Pontiac, and Mobley complied, but Mobley then reached around toward his left side. Zollers instructed Mobley not to reach around, and Mobley "simultaneously" pushed off the car and started running. Lane started running at about the same time. A chase ensued. Mobley was caught and handcuffed after being tackled and tazed. At that point, the officers considered him to be under arrest. Lane was also caught and arrested.

{¶ 7} After his arrest, Mobley was patted down by Deputy Baranyi. Baranyi found in Mobley's shorts pocket numerous light-brown gel capsules, which the officers associated with heroin, and a separate plastic baggie containing a substance that the officers believed to be marijuana. At the scene and on the way to the jail, Mobley twice asserted that Lane had placed the drugs in his (Mobley's) pocket.

{¶ 8} After Lane and Mobley were in custody, Baranyi searched the vehicle. When he opened the door, he smelled marijuana. Baranyi found plastic baggies in the center console and a firearm under the front passenger seat.

{¶ 9} Mobley was indicted for possession of heroin, obstructing official business, and resisting arrest. In September 2013, he filed a motion to suppress evidence. After a hearing, the

trial court overruled the motion to suppress. On November 26, 2013, Mobley entered a no contest plea to possession, and the other charges were dismissed. He was sentenced as described above.

{¶ 10} Mobley raises one assignment of error on appeal, which challenges the trial court's denial of his motion to suppress.

THE TRIAL COURT ERRED WHEN IT OVERRULED MR. MOBLEY'S MOTION TO SUPPRESS.

{¶ 11} In ruling on a motion to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*; *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 11.

{¶ 12} First, Mobley argues that the officers did not have a reasonable articulable suspicion on which to order him from Lane's vehicle during the traffic stop, based only on the "burnt odor of marijuana."

{¶ 13} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "A police officer may lawfully stop a vehicle if he has a reasonable articulable

suspicion that the motorist has engaged in criminal activity[,] including a minor traffic violation." *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 8. Once a lawful stop has been made, the police may require the driver and any passengers to exit the vehicle pending completion of the traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). "What is now referred to as a '*Mimms* order' was viewed by the [U.S. Supreme] court as an incremental intrusion into the driver's personal liberty which, when balanced against the officer's interest in protection against unexpected assault by the driver and against accidental injury from passing traffic, is reasonable under the Fourth Amendment." *Evans* at 406; *State v. Trammer*, 8th Dist. Cuyahoga No. 85456, 2005-Ohio-3852, ¶ 14. Where there is a lawful basis for the stop, ordering an occupant out of the car is proper, even if the officers are not prompted by a reasonable, articulable suspicion of criminal activity. *Evans* at 408; *see also State v. Broaddus*, 2d Dist. Montgomery 23525, 2010-Ohio-490, ¶ 18.

**{¶ 14}** Mobley does not dispute the legitimacy of the traffic violations for which the car was stopped, and the record supports the conclusion that numerous traffic laws had been broken. If the car were lawfully stopped, the officers did not need a reasonable, articulable suspicion before ordering Mobley to step out of the car. *Mimms*, 434 U.S. at 111; *Evans* at 408. Thus, his first argument is without merit.

**{¶ 15}** Second, Mobley argues that the officers lacked sufficient probable cause to pat him down. The evidence presented at the suppression hearing established, and the trial court found, that, although the officers intended to pat Mobley down for their safety when he got out of

the car, he attempted to flee and struggled with the officers before they had a chance to pat him down. The deputies testified that, once they had Mobley handcuffed, which was accomplished only through the involvement of three officers and a taser, he was under arrest for obstruction. He was then searched incident to his arrest. Mobley's argument improperly focuses on whether the officers had probable cause to pat him down when he exited the car; he was searched incident to his arrest.

{¶ 16} A search incident to a lawful arrest is one exception to the general prohibition against warrantless searches. *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L .Ed.2d 685 (1969). Upon an individual's lawful custodial arrest, police officers are entitled to conduct a warrantless search of the person and the immediately surrounding area incident to that arrest. *Chimel,* supra; *State v. Williams*, 2d Dist. Montgomery No. 22924, 2009-Ohio-1627, ¶ 13. "When conducting a search incident to arrest, police are not limited to a *Terry* pat-down for weapons, but may conduct a full search of the arrestee's person for contraband or evidence of a crime." *State v. Todd*, 2d Dist. Montgomery No. 23921, 2011-Ohio-1740, ¶ 31, citing *State v. Gagaris*, 12th Dist. Butler No. CA2007-06-142, 2008-Ohio-5418, ¶ 16. "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Id.*, citing *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

{¶ 17} Mobley attempted to flee a car that smelled strongly of marijuana, while deputies were investigating, and struggled with them at some length. At that point, the deputies had probable cause to arrest Mobley for obstructing official business. The deputies' warrantless

search of Mobley was justified as a search incident to his arrest.

{¶ 18}  Finally, Mobley argues that the statements he made and the evidence found on his person and in the vehicle were fruit of the poisonous tree.  We have found that the search of Mobley's person, during which the heroin was discovered, was not unlawful.  Mobley was not charged with any offenses based on the firearm and baggies found in the vehicle.

{¶ 19}  As for Mobley's statements attempting to implicate Lane in the placement of the drugs, Mobley argues that he "was not properly advised of his *Miranda* rights, and did not knowingly, voluntarily or intelligently waive his rights."

{¶ 20}  The *Miranda* doctrine applies to custodial interrogation; it requires, among other things, that law enforcement officers inform a suspect that he does not have to answer their questions, and requires that police interrogation cease after an accused has invoked his right not to respond to questioning.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).   It is evident from the record that the statements Mobley made to the deputies about the source of the drugs were not made in response to any interrogation, but were entirely unsolicited.  Voluntary statements are not prohibited by the *Miranda* doctrine, and *Miranda* imposes no duty on the State to ensure that the accused will make no voluntary incriminating statements.  *Id.* at 478;  *State v. Montgomery*, 2d Dist. Montgomery No. 23870, 2010-Ohio-5047, ¶ 15.

{¶ 21}  The statements by Mobley were voluntary, and it is questionable whether they were incriminating.  No evidence was presented that Mobley's statements were solicited by the deputies. Thus, there is no basis for us to conclude that Mobley's rights were violated or that his statements should have been suppressed.

{¶ 22}  Mobley's assignment of error is overruled.

**{¶ 23}**   The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

April F. Campbell
Shawn P. Hooks
Hon. Mary Katherine Huffman