[Cite as *State v. Goines*, 2015-Ohio-3505.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26532 |
| | : | |
| v. | : | T.C. NO. 14CR1996 |
| | : | |
| DELONTAE GOINES | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___28th___ day of ____August____, 2015.

. . . . . . . . . . .

MICHELE D. PHIPPS, Atty, Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Delontae Goines appeals his conviction and sentence for one count of improper handling of a firearm, in violation of R.C. 2923.16(B), a felony of the fourth degree.   Goines filed a timely notice of appeal with this Court on December 22, 2014.

{¶ 2} The incident which forms the basis for the instant appeal occurred on June 14, 2014, when Dayton Police Officers James Mollohan and William Gross were working an overtime shift from 4:00 p.m. to 8:00 p.m. at the Summit Square Apartments in Dayton, Ohio. The reason for the officers' presence at the apartment complex was to provide surveillance and security and to identify individuals who had been trespassed from the property and remove them. Officers Mollohan and Gross were wearing the uniform of the day and were in separate marked police cruisers. Both officers were posted at the entrance to the apartment complex, which was the only source of ingress and egress from the property.

{¶ 3} At approximately 6:00 p.m., the officers observed an individual driving a silver Buick enter the apartment complex and drive past them. The officers ran the license plate number and determined that the owner of the vehicle was named Delontae Reese. Reese was described as a black male, approximately six feet tall, and weighing 180 pounds. The officers also discovered that Reese had been trespassed off the grounds of the apartment complex in May of 2014. Based on the information they received, the officers began following the silver Buick. Once they got close enough, the officers observed that the driver of the vehicle matched the physical description of Reese that they had received from dispatch. Officer Mollohan testified that he was, however, unable to discern the driver's height because he was sitting in the driver's seat of the Buick.

{¶ 4} Shortly thereafter, the Buick stopped, and the officers drove by the vehicle in their cruisers. They turned around, drove back, and observed the driver of the Buick talking to some people at the apartment complex. As the officers approached in their

cruisers, the driver reentered the Buick and began to drive back towards the exit to the apartment complex. The officers stopped the Buick and made contact with the driver. Officer Mollohan immediately asked the driver if he was Delontae Reese. The driver responded no and stated that his name was Delontae Goines. When asked for identification, Goines stated that he did not have any. Although ultimately immaterial to the instant appeal, the officers' testimony diverges slightly at this point. Specifically, Officer Mollohan testified that upon becoming aware that Goines did not have any identification, he was removed from the Buick and placed in the back of a cruiser while his identification was checked. Conversely, Officer Gross testified that Goines was permitted to remain in the Buick while they checked his identification.

{¶ 5} Despite their differing recollections in this regard, the officers checked the identifying information the driver provided and were informed that he, Goines, was driving with a suspended license. Goines was placed under arrest for driving under suspension, and the vehicle was towed because there was no licensed driver present to take the vehicle. Prior to the Buick being towed, the officers inventoried the contents of the vehicle pursuant to the tow policy of the Dayton Police Department. During the inventory search of the vehicle, the officers found two handguns in the glove compartment. One of the handguns was a black semi-automatic with a loaded magazine lying directly next to it.

{¶ 6} On August 21, 2014, Goines was indicted for one count of improper handling of a firearm in a motor vehicle. At his arraignment on September 30, 2014, Goines stood mute, and the trial court entered a plea of not guilty on his behalf. Thereafter, Goines filed a motion to suppress the semi-automatic handgun seized during the inventory search of the vehicle, as well as any statements made by Goines to the police after being

stopped at the apartment complex. A hearing was held on Goines' motion to suppress on November 6, 2014. At the conclusion of the hearing, the trial court overruled Goines' motion to suppress from the bench. The trial court issued an entry overruling Goines' motion on November 14, 2014.

{¶ 7} Goines subsequently pled no contest to improper handling of a firearm on November 18, 2014. On December 16, 2014, the trial court sentenced him to community control sanctions not to exceed five years.

{¶ 8} It is from this judgment that Goines now appeals.

{¶ 9} Goines' sole assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

{¶ 11} In his sole assignment, Goines contends that the trial court erred when it overruled his motion to suppress. Specifically, Goines argues that the evidence adduced at the suppression hearing established that Officers Mollohan and Gross did not have a reasonable suspicion to stop the vehicle he was driving because he did not commit a traffic violation. Goines further asserts that even if the stop was reasonable, it should have ended once the officers removed him from the vehicle and observed that he was three inches shorter than the physical description provided of Delontae Reese, the registered owner of the vehicle.

{¶ 12} Initially, we note that the only witnesses who testified at the hearing held on Goines' motion to suppress were Officers Mollohan and Gross. The trial court found their testimony to be credible and adopted it as its factual findings.

{¶ 13} As this Court has previously noted:

In ruling on a motion to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.; State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012–Ohio–6189, ¶ 11.

*State v. Mobley*, 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 11.

**{¶ 14}** "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all interactions between citizens and the police, however, implicate the protections of the Fourth Amendment. *State v. Garrison*, 2d Dist. Montgomery No. 24857, 2012-Ohio-3846, ¶ 15.

**{¶ 15}** A police officer may stop and detain a suspect when the officer has a reasonable and articulable suspicion that the suspect has committed a criminal offense. *State v. Regulus*, 2013-Ohio-507, 986 N.E.2d 1105, ¶ 10 (2d Dist.), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968). A court determines the existence of reasonable suspicion by evaluating the "totality of the circumstances." *State v. Love,* 2d Dist. Montgomery No. 23902, 2011-Ohio-1287, ¶ 18. To evaluate the totality of the

circumstances, the court must consider the individualized facts "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 21.

{¶ 16} The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest. *State v. Jones,* 188 Ohio App. 3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 13 (10th Dist.).

{¶ 17} Investigatory detention, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Strozier*, 172 Ohio App. 3d 780, 2007-Ohio-4575, 876 N.E.2d 1304 (2d Dist.), citing *Terry v. Ohio.* An investigatory stop does not constitute an arrest or place the suspect in custody. *State v. Jones* at ¶ 16. It is well established that "[a]n individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *State v. Love*, 2d Dist. Montgomery No. 23902, 2011-Ohio-1287, ¶ 18, quoting *In re D. W.,* 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114, ¶ 13-15 (2d Dist.).

{¶ 18} During a brief investigatory stop, without placing the suspect in custody or under arrest, an officer is entitled to ask questions to confirm his suspicions that criminal activity occurred. During a *Terry* stop, an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants, often called a "field investigation". *State v. Wortham*, 145 Ohio App. 3d 126, 761 N.E. 2d 1151 (2d Dist. 2001). *See also State v. Harrison*, 2d Dist. Montgomery No. 25128, 2013-Ohio-1235.

{¶ 19} In the instant case, Officers Mollohan and Gross had a reasonable suspicion that the individual they observed driving the Buick had previously been criminally trespassed from the apartment complex. Upon checking the license plate number of the Buick, Officer Mollohan learned that the vehicle was registered to Delontae Reese, a thin black male, approximately six feet tall, and weighing approximately 180 pounds. Officer Mollohan testified that he was also aware that Delontae Reese had been trespassed from the apartment complex in May of 2014. Officer Mollohan testified that he was not provided a photograph of Reese when he checked the license plate number.

{¶ 20} When the Buick registered to Reese passed his cruiser, Officer Mollohan testified that he observed that the driver was a young black male with a thin build. Officer Mollohan testified that he could not tell exactly how tall the driver was, but he testified that the driver looked to be of average height. Based on his observations, Officer Mollohan clearly had a reasonable suspicion to stop the vehicle and make contact with the driver in order to determine whether he was Delontae Reese. Officer Mollohan testified that after being stopped, the driver was unable to provide identification but identified himself Delontae Goines. Thereafter, Officer Mollohan removed Goines from the vehicle and placed him in the back of a police cruiser while awaiting information regarding his identity.

{¶ 21} Goines argues that the investigative stop should have been concluded when he exited the Buick because he is three inches shorter than Reese, who was described as six feet tall. Goines asserts that upon observing the height discrepancy between himself and Reese, Officer Mollohan's "reasonable suspicion dissipated," and the stop should have been immediately concluded. In support of his argument, Goines

relies on *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984), wherein the police stopped the defendant for suspected failure to display license plates. Upon approaching the vehicle, the officer observed that a license plate was properly displayed. The *Chatton* court subsequently held that the police officer's legitimate need to stop the defendant ended when a valid license plate was observed, so that any further intrusion upon his protected liberty interests was unwarranted and unwanted. *Chatton,* however, is distinguishable from the instant case.

{¶ 22} We acknowledge that Officer Mollohan's testimony was different than that of Officer Gross regarding when Goines was ordered to exit the Buick. However, the police stopped Goines because he was driving a vehicle that was registered to an individual who had been previously trespassed off the property. The police observed that Goines also met the general description of Reese. Upon being stopped, the driver told the police that he was not Reese, but that his name was Delontae Goines. Curiously, Reese and Goines even have the same first name. When Goines indicated that he did not possess identification, the police were clearly authorized to make further inquiry in order to determine his identity and to make sure that he was not Reese. A height differential of just three or four inches is inconclusive where otherwise the driver fits the general description of Reese. We also note that the discrepancy in the officers' testimony regarding when Goines was removed from the motor vehicle is inconsequential to our analysis. The officers were permitted to remove Goines from his vehicle in order to determine his identity. Upon discovering that Goines' license was under suspension, the police were authorized to arrest him and perform an inventory search prior to the vehicle being towed. Thus, the trial court did not err when it overruled Goines' motion to

suppress.

{¶ 23} Goines' sole assignment of error is overruled.

{¶ 24} Goines' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and FAIN, J., concur.

Copies mailed to:

Michele D. Phipps
Jay A. Adams
Hon. Mary Katherine Huffman