[Cite as *State v. Cash*, 2015-Ohio-3792.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO
      Plaintiff-Appellee

v.

MATTHEW CASH
      Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:
:

C.A. CASE NO.   26535

T.C. NO. 2014-CR-728

(Criminal appeal from
  Common Pleas Court)

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___18th___ day of _____September_____, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee


ANDREW M. ANASTASI, Atty. Reg. No. 0088440, Post Office Box 584, Dayton, Ohio 45401
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Matthew Cash, filed December 26, 2014. Cash appeals from his December 2, 2014 Judgment Entry of Conviction, following his no contest pleas to two counts of aggravated possession of oxycodone and methadone, in violation of R.C. 2925.11(A), and to one count of

possession of hydrocodone (prior drug abuse offense), in violation of R.C. 2925.11(A), all felonies of the fifth degree.[1] On December 2, 2014, the trial court sentenced Cash to community control sanctions not to exceed five years.

{¶ 2} On May 30, 2014, Cash filed a Motion to Suppress, which the State opposed. The trial court held a hearing on September 18, 2014 and overruled the motion thereafter. At the hearing, Dayton Police Officer Timothy Zimmer testified that he has over 32 years of experience with the City of Dayton Police Department. He testified that on February 25, 2014, at approximately 1:00 p.m., he and another officer conducted routine foot patrol at the RTA hub at the corner of Third and Main Streets. Zimmer testified as follows:

I arrived with another officer, Officer Jeff Brown. We were immediately contacted inside by RTA security director, Barb Brookshire. She pointed out a particular table inside of the hub, was concerned that they had been in there for many hours with no movement. She suspected that they were not in there to ride the bus. They have pretty strict rules of conduct for passengers and patrons of the RTA hub. They had not met the criteria to remain in there for as many hours as they were in there and asked us if we could find out what their business was.

{¶ 3} Zimmer stated that he observed two or three individuals at a table, and that there "was one particular person that she was concerned about. She felt like he had been in there before and probably been removed before but wasn't specific on whether

---

[1] We note that Cash's judgment entry of conviction erroneously indicates that Cash entered pleas of guilty.

she knew that he had been trespassed in the past." Zimmer stated that "[w]e retrieved identification from the person that she had pointed out to us" and learned Cash's identity. According to Zimmer, the officers "checked his identification through our records system in my car, found out that he had been previously trespassed indefinitely from the RTA hub on the, June of '13, I believe, * * * for life from their facility." Zimmer stated that "[w]hen they have a trespass, it's documented on our computer. It's also documented within the system inside the RTA hub and that was confirmed, also." Zimmer testified that once he obtained that information, Cash "was placed under arrest for trespassing" and searched. In the course of the search, Zimmer testified that he found "a small tin, * * * like a tobacco tin or a candy tin in an inside jacket pocket." According to Zimmer, Cash voluntarily and "immediately said those are my mints." Zimmer testified that he opened the tin and found six to ten "white tablets." Zimmer stated that he removed the tin from Cash's person because, when a subject is to be transported to jail, "everything in their pockets, including one piece of gum, a toothpick, has to be placed in [a] jail property bag."

{¶ 4} On cross-examination, Zimmer stated that he walks through the RTA hub about twice a day while on routine patrol, and that he has patrolled that area hundreds of times. On February 25, 2014, Zimmer stated that his cruiser was parked on Third Street while he and Brown patrolled the hub. Zimmer stated that when Brookshire alerted him and Brown to Cash's presence with the other individuals at the table, "she wasn't interested in us finding out who the other people were. She had watched the defendant for several hours." Zimmer stated that he did not recognize Cash. According to Zimmer, the table where Cash sat was "the first table inside the Third Street doors" in the food court area. Zimmer stated that Cash was drinking a soda at the table and was not

being disruptive. He testified that the RTA "has a security staff that keeps a pretty good eye on everybody in there and when there's somebody in there loitering for an extended period of time and they feel like they're not using the bus system, their code of conduct says that it is not a place to just gather and loiter and hang out." Zimmer testified that he approached Cash specifically and asked for his identification, and that Cash provided it. Zimmer stated that he took the identification to his cruiser and Brown stayed inside the hub with Cash. According to Zimmer, it took him about a minute and a half to two minutes to run the identification.

{¶ 5} At the close of cross-examination, counsel for the State asked the court to reopen direct examination, and the court granted the request over Cash's objection. Zimmer then testified that Cash was charged with criminal trespassing, and that he pled guilty in Dayton Municipal Court.

{¶ 6} The record reflects that Cash filed a post-hearing brief in support of his motion to suppress, asserting that Zimmer lacked reasonable articulable suspicion when he obtained Cash's identification, and that Cash was seized at the time. The State did not file a brief in response.

{¶ 7} In overruling Cash's motion to suppress, after specifically finding Zimmer's testimony credible, the trial court found as follows:

The approach by the officers here was initially a consensual encounter not implicating any Fourth Amendment guarantees. Defendant's liberty was not constrained in any way. Even if not initially a consensual encounter, the initial encounter and subsequent brief investigatory detention consisting of asking Defendant for identification was

a Terry stop based on reasonable and articulable suspicion. The officers were advised by RTA security personnel, Ms. Brookshire, that she had observed Defendant for several hours sitting at the table. The officers knew that loitering is prohibited at the RTA hub. Ms. Brookshire communicated to the officers her suspicion that Defendant had been trespassed from the RTA. The totality of the information available to the officers from a credible and identifiable source created a reasonable and articulable suspicion warranting a brief detention of Defendant for the purpose of confirming his identity and determining if he had been trespassed. Upon that confirmation, Defendant was subject to arrest for trespass.

The search of Defendant incident to arrest and Defendant's voluntary statement about "his mints" do not trigger the exclusionary rule. There was no evidence of any other custodial statement, nor of any custodial interrogation.

**{¶ 8}** Cash asserts one assignment of error herein as follows:

THE TRIAL COURT ERRED TO MR. CASH'S PREJUDICE BY DENYING HIS MOTION TO SUPPRESS EVIDENCE.

**{¶ 9}** According to Cash, "Police did not have reasonable suspicion to stop Mr. Cash, leading to his illegal arrest and search." The State responds that the officers engaged Cash in a consensual encounter and then searched him incident to arrest.

**{¶ 10}** As this Court recently noted:

When reviewing a motion to suppress, we must accept the trial

court's findings of fact, if they are supported by competent, credible evidence. *State v. Love*, 2d Dist. Montgomery No. 23902, 2011-Ohio-1287. In ruling on a motion to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1973). The credibility of the evidence was for the trial court to determine, because it heard the evidence directly. *State v. Olson*, 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 11, citing *State v. Myles*, 2d Dist. Montgomery No. 25297, 2013-Ohio-2227, ¶ 21.

"Accepting the findings of fact of the trial court as true, we must independently determine as a matter of law, whether the facts meet the appropriate legal standard." *State v. Love* at ¶ 19; see also, *State v. Mobley*, 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 11; *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 11; *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002-Ohio-268.

*State v. Millerton*, 2d Dist. Montgomery No. 26209, 2015-Ohio-34, ¶ 11-12.

**{¶ 11}** As this court further noted in *Millerton*, ¶ 19-23:

"The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all interactions between citizens and the police, however, implicate the protections of the Fourth Amendment. *State v. Garrison*, 2d Dist. Montgomery No. 24857,

2012-Ohio-3846, ¶ 15.

The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest. *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 13 (10th Dist.).

During a consensual encounter, the officer and citizen can engage in conversation, and a person's voluntary statements may be used against him or her, as long as that the person knows that he or she is free to walk away and the police have not conveyed a message that compliance with their requests is required. *State v. Barton*, 2d Dist. Montgomery No. 21815, 2007-Ohio-2348, ¶ 14–15.

Investigatory detention, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304 (2d Dist.), citing *Terry v. Ohio*. An investigatory stop does not constitute an arrest or place the suspect in custody. *State v. Jones* at ¶ 16. It is well established that "[a]n individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *State v. Love,* 2d Dist. Montgomery No. 23902, 2011-Ohio-1287, ¶ 18, quoting *In re D.W.*, 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114, ¶ 13–15 (2d Dist.).

During a brief investigatory stop, without placing the suspect in custody or under arrest, an officer is entitled to ask questions to confirm his suspicions that criminal activity occurred. During a *Terry* stop, an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants, often called a "field investigation". *State v. Wortham*, 145 Ohio App.3d 126, 761 N.E.2d 1151 (2d Dist.2001). *See also, State v. Harrison*, 2d Dist. Montgomery No. 25128, 2013-Ohio-1235.

**{¶ 12}** We initially note that the trial court found Zimmer's testimony to be credible, and we defer to the trial court's assessment of credibility. Having reviewed the transcript of the suppression hearing, we conclude that the officers, in approaching Cash, initiated a consensual encounter and not a *Terry* stop. Brookshire, whom Zimmer recognized as the director of security for the RTA, pointed Cash out to the officers upon their arrival and advised them that he had been at the table for several hours. Zimmer testified that Brookshire further advised him that Cash had "probably been removed before but wasn't specific on whether she knew that he had been trespassed in the past." Zimmer testified that he did not recognize Cash, and that Cash was drinking a soda and was not being disruptive. Zimmer, who has substantial experience patrolling the RTA hub, was aware of the RTA policy that prohibits loitering there. As this Court has previously noted, in the absence of coercion, a request for a person's identification in the course of a consensual encounter does not render the encounter non-consensual. *State v. Thomas*, 2d Dist. Montgomery No. 23979, 2011-Ohio-1292, ¶ 10. Zimmer testified that he requested and obtained Cash's identification without incident; there was no testimony

that the officers constrained Cash's liberty in any way. Upon learning that Cash had been previously trespassed from the area and was prohibited from being there, Zimmer arrested him for criminal trespassing. *See* R.C. 2911.21. It is well settled that "[s]earch incident to arrest is [an] exception to the warrant requirement 'which allows officers to conduct a search that includes an arrestee's person and the area within the arrestee's immediate control.'" *State v. Coleman*, 2d Dist. Montgomery No. 25924, 2014-Ohio-2091, ¶ 20 (citation omitted). As this Court has previously noted, this exception is based upon the interests of officer safety and the preservation of evidence. *Id.* Since the officers engaged Cash in a consensual encounter and then searched his person incident to a lawful arrest, the trial court did not err in overruling his motion to suppress. Accordingly, Cash's assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Carley J. Ingram
Andrew M. Anastasi
Hon. Mary L. Wiseman